UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Melissa A. McIntyre,<br><br>        Plaintiff,<br><br>vs.<br><br>Reliance Standard Life Insurance Company,<br><br>        Defendant. | Court File No. 17-cv-05134-JRT-DTS<br><br>**RELIANCE STANDARD LIFE INSURANCE COMPANY'S RESPONSIVE MEMORANDUM TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**I.   INTRODUCTION**

Plaintiff's motion for summary judgment fails to demonstrate that she has met her burden of proving that she is entitled to long-term disability benefits as of January 18, 2016. Instead, she argues at length that the delay in Reliance Standard deciding her appeal constituted a "serious procedural irregularity" which affected the ultimate decision on her claim. Neither the law nor the facts support her position.

A Plan participant seeking benefits under the arbitrary and capricious standard must show proof of disability and that the administrator's decision was unreasonable. On those issues McIntyre does not offer any specific evidence in her argument demonstrating that she is disabled and that Reliance Standard abused its discretion. Rather, she relies upon all of the information in the administrative record, beginning in 2011 when she was approved for "Regular Occupation" benefits, and throughout 2015, to show that her medical condition did not change. Her position misstates the law and ignores the relevant medical records, the independent medical examination, and

vocational assessment Reliance Standard relied upon in its decision. The remainder of her arguments are also unsupported in the law or consist of disagreements with the medical and vocational opinions Reliance Standard had good reason to rely upon in its review of her claim.

## II.   LEGAL ARGUMENT[1]

### A.   The "arbitrary and capricious" standard of review applies.

McIntyre contends that Reliance Standard's delay in deciding her appeal constituted a "serious procedural irregularity" which raises "serious doubts" regarding the integrity of its December 22, 2016 appeal decision. (Plaintiff's Memorandum ("Pl. Memo."), at 4-11; 35-44). However, a less-deferential standard of review is only appropriate when a Plaintiff has presented "material, probative evidence demonstrating (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir.1998).

The "serious breach" requirement of the test presents a considerable hurdle for a plaintiff to overcome. *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 588 n.9 (8th Cir.1999). The mere existence of irregularities is not sufficient to satisfy the second part of the test. *Buttram v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 76 F.3d 896, 901 (8th Cir.1996). The irregularities must have a connection to the substantive decision reached by the administrator. *Id.* The evidence

---

[1] Given that the parties' opening briefs each set forth a detailed description of the facts, Reliance Standard will include in its legal argument any clarifications to the facts presented in McIntyre's brief.

2

"must give rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Tillery v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1197 (8th Cir. 2002).

McIntyre has not presented any evidence that would indicate that the denial was the product of an arbitrary decision or Reliance Standard's "whim." *Id.* McIntyre does not identify conduct that caused a serious breach of Reliance Standard's fiduciary duty and does not point to any evidence that Reliance Standard acted with any improper motive or failed to exercise its judgment in denying her appeal. McIntyre merely argues that Reliance Standard delayed too long in issuing its appeal decision, which is "insufficient by [itself] to require a higher standard of review." *See Phillips-Foster v. UNUM Life Ins. Co. of Am.,* 302 F.3d 785, 796 (8th Cir. 2002); *Goldammer v. Aid Assoc. for Lutherans*, 747 F.Supp. 1366, 1369 (D.S.D.1990) (where the administrator required additional time to resolve open questions regarding benefits eligibility, a delay was not a serious irregularity); *Marcum v. Ret. Plan for Hourly-Rated Employees of Noranda Aluminum*, No. 4:10CV2217 JCH, 2011 WL 4342623, at *3 (E.D. Mo. Sept. 15, 2011) (a delay in responding to a plaintiff's appeal does not rise to the level of a serious procedural irregularity sufficient to preclude deference).

The cases McIntyre cites in her Memorandum are not instructive because the facts of those cases are dissimilar to the case at hand. Both the *McGarrah* case and the *Seman* case involve factual scenarios where the defendants failed to process the appeal and no notice was sent to the plaintiff. *See McGarrah v. Hartford Life Ins. Co.,* 234 F.3d

1026, 1031 (8th Cir. 2000)*; Seman v. FMC Corp. Retirement Plan for Hourly Employees*, 334 F.3d 728, 733 (8th Cir. 2003).

Setting aside the fact that McIntyre's argument lacks legal support, it is true that 197 days lapsed between the time Reliance Standard received McIntyre's appeal on June 8, 2016 and December 22, 2016 when it rendered its decision on her appeal.[2] As discussed below, however, Reliance Standard put McIntyre on notice in June, July and August that the claim decision deadline needed to be tolled; conducted a review of the information McIntyre submitted; requested additional medical records; arranged for an IME; obtained an updated vocational report, and then issued its decision – all of which satisfied its obligation to conduct a "full and fair review." 29 U.S.C. § 1133:

> (1) Reliance Standard notified McIntyre's counsel on **June 22, 2016** that the time it took her providers to respond to its request for records would "*toll*" the appeal determination deadline. (RSL 453-54).[3]
>
> (2) *Reliance Standard sent requests on that date to three providers*. (RSL 455-57). When records were not provided, the company followed up with McIntyre's counsel on **July 19-20, 2016**. (RSL 458-60). Its **July 20** letter also put McIntyre on notice that the claim timeline would be tolled until the records were received. (RSL 460). Thus, the time to decide the appeal was tolled until **August 12**, approximately 21 days.
>
> (3) *Reliance Standard was entitled to find out if there were additional treatment records from McIntyre's providers*. While it is true that Dr. Tseng (McIntyre's treating neurologist) had provided records to Reliance Standard previously (Pl.

---

[2] The date on which an administrator is required to issue a decision starts upon its receipt of the appeal. 29 C.F.R. § 2560.503-1(i)(1)(i).

[3] McIntyre incorrectly states that the letter referred to an IME. (RSL 435). Instead, it stated, "our request to these treatment providers for additional information will toll the statutory time frames for reaching an appeal determination, from the time of our request for additional information until such time as we receive the requested information from you." (Compare Pl. Memo., at 7 to RSL 453) (Emphasis supplied).

4

    Memo, at 6), the last office visit record attached to the **July 25, 2016** facsimile from her office was from July 29, 2015. (RSL 1075; 959)

(4) In its **August 25, 2016** letter, Reliance Standard confirmed to McIntyre that the records had been received and reviewed *and advised McIntyre that she would be required to attend an IME.* (Docket No. 19; Hittler Aff., Ex. 22(a) at 462-63, RSL 211).[4]

(5) Reliance Standard's **October 20** and **25, 2016** letters to attorney Lucas correctly notified him that the appeal decision would take longer than 45 days. (Hittler Aff., Ex. 22g, RSL 466-69). This notice was consistent with its June 22 letter, which confirmed that the claim decision period would be tolled during the time that it received the information it had requested of her. (RSL 435).[5]

(6) Attorney Lucas lodged several objections to Reliance Standard's IME notices. (Pl. Memo., at 8-10). In each instance, Reliance Standard accommodated the request. (*Id.*) All in all, Reliance Standard (and the IME provider) and Mr. Lucas exchanged 17 letters between **June 22** and **December 7, 2016**. (Pl. Memo., at 6-10).

  Ultimately, McIntyre was not prejudiced in any meaningful respect. She was given several opportunities to provide additional information to Reliance Standard and informed that an IME was needed to provide an in-person evaluation of her restrictions and ability to work. Under these circumstances, any delays were necessary in order for Reliance Standard to complete a full and fair review and did not adversely affect the integrity of the final decision. See *Buttram*, 76 F.3d at 901.

---

[4] McIntyre states that "no activity" occurred between the June 22, 2016 letter and August 25, 2016. (Pl. Memo., at 7-8). This is also untrue, as evidenced by the letters Reliance Standard sent to the providers in August and also to McIntyre's counsel on July 19-20. (*Id.*)

[5] If the time period from August 25, 2016 to December 3, 2016 were tolled (approximately 100 days), less the 21 days between October 20 and November 10 when the IME vendor did not set up the examination, then the decision would have been tolled for an additional 81 days. It therefore took Reliance Standard *95* days to decide the claim (197 days in total less 21 days to receive records and 81 days to confirm the IME).

5

### B. Dr. Bushara's IME is a part of the Administrative Record.

McIntyre cites to long-established Eighth Circuit law holding that a party may not add evidence to the administrative record, *Brown v. Seitz Foods Inc. Disability Benefit Plan*, 140 F.3d 1198, 1199 (8th Cir. 1998), and then moves to strike a document that was generated and relied upon by Reliance Standard in its appeal determination. (Pl. Memo., at 44-46). McIntyre cites no legal authority that supports this proposition.

### C. Reliance Standard's approval of McIntyre's claim for "Own Occupation" Plan benefits and initial approval of her claim for "Any Occupation" does not bar it from considering new information.

McIntyre's single argument on the merits of her claim is that Reliance Standard had no new information before it that contradicted its decision to pay benefits to her under both the "own occupation" and "any occupation" Policy provisions, citing to *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586 (8th Cir. 2004). (Pl. Memo., at 46-47).[6]

Oddly, her argument does not cite to any medical records or even to her own statement submitted on appeal. (Pl. Memo., at 46-48). The only possible explanation for this omission is that she is asking the Court to consider each record she has identified in her Memorandum regardless of when it was generated and whether she referred to any of those records in her May 31, 2016 appeal. (Pl. Memo., at 13-18). She is not permitted

---

[6] McIntyre misstates the Court's holding in *McOsker*. After noting that a prior approval of benefits does not estop the insurer from later changing its mind, the Eighth Circuit commented that such prior payment would "weigh against the propriety of [its] decision" unless the new information "alters in some significant way" the existing information. 279 F.3d at 589. The court there did not hold, as McIntyre alleges, that termination is per se unreasonable where there is no evidence of a change in the claimant's condition.

6

to construct new factual arguments before the Court. *See Farley v. Arkansas Blue Cross and Blue Shield,* 147 F.3d 774, 777 (8th Cir. 1998); *Brown v. Seitz Foods, Inc., Disability Ben. Plan,* 140 F.3d 1198, 1200 (8th Cir. 1998). The vast majority of the records she has identified provide background information but are simply not relevant to the issue of whether she is entitled to Plan benefits under the "any occupation" Policy definition.[7]

Even assuming that *McOsker* has some application to this case, Reliance Standard obtained a considerable amount of new information demonstrating that McIntyre was able to work in "any occupation," including the IME Report by neurologist Dr. Bushara. *See Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 661 (8th Cir. 2017) (no abuse of discretion for defendant to consult a neutral, independent doctor with the same specialty as plaintiff's attending physician to review the record and make a recommendation); *See also Waldoch v. Medtronic, Inc.,* 953 F. Supp. 2d 979, 1003 (D. Minn. 2013), *aff'd*, 757 F.3d 822 (8th Cir. 2014).

The erroneous premise of McIntyre's *McOsker* argument is that the payment of benefits from October 19, 2013 (when her "any occupation" benefits began) to January 18, 2016 was done with Reliance Standard's unequivocal approval. (Pl. Memo., at 48). To the contrary, Reliance Standard's review of her August 2013 Activities of Daily Living Questionnaire ("ADL") raised questions about her functionality, which then led

---

[7] As discussed elsewhere herein, the only physician with whom McIntyre treated for her CMT was Dr. Tseng. Reliance Standard had a reasonable basis to provide greater weight to those office visit records given Dr. Tseng's credentials, rather than the nurses and physical therapists who treated McIntyre.

to extensive efforts over the next two-plus years to determine if she was entitled to continued benefits. (Defendant's Memorandum of Law ("Def.'s Memo."), Docket No. 18, at 6-12).

The new information Reliance Standard obtained included those records and other information identified in its February 5, 2016 initial decision letter, some of which showed that she was capable of performing activities and others showing a discrepancy between her statements to Reliance Standard and her actual functionality.[8] *See Kecso v. Meredith Corp.*, 480 F.3d 849, 854 (8th Cir. 2007) ("The fact that defendant agreed to pay LTD benefits while it investigated apparent inconsistencies and ambiguities in the medical record and that it based its decision on the entire record, including subsequently received medical evidence, does not create a basis upon which a court should find a failure to use proper judgment and apply a less deferential standard of review."); *see Tillery*, 280 F.3d at 1197 ("The plan administrator's fiduciary duties extend to everyone covered by the plan, and an administrator who fails properly to investigate a claim breaches its fiduciary duty to all beneficiaries by granting benefits to unqualified claimants."). By way of example:

    (a) Nurse Thompson's notes from August 13, 2013, noting that McIntyre cared for, bred and showed dogs and may have been working as a part-time respite care provider. (Hittler Aff., Ex. 8, RSL 446).

---

[8] Reliance Standard acknowledges that Ms. Shrot's Employability Evaluation commented on Reliance Standard's Employability Assessment (Hittler Aff., Ex. 19, at RSL 1029-30) and that McIntyre responded to the background report and surveillance report. (Hittler Aff., Ex. 19, at RSL 1037-38). It also acknowledges that McIntyre completed an Activities of Daily Living Questionnaire on September 9, 2015 describing her medical issues and daily activities. (RSL 965-73).

(b) McIntyre's August 20, 2013 ADL, which noted that she could take care of her basic daily needs, perform household chores, drive, engage in dog training on a weekly basis, babysit, and work out several times a week. (Hittler Aff., Ex. 7, RSL 728-33).

(c) Nurse Thompson's March 21, 2014 Physical Capabilities Questionnaire stating that no formal functional testing of her functional capacity had been performed but that she was capable of sedentary lifting. (Hittler Aff., Ex. 9, RSL 835-36).

(d) Dr. Tseng's office visit note of July 21, 2014 included McIntyre's self-report that she was fatiguing more easily and having other physical issues but that ["i]n spite of this, she continues to be very active raising service dogs and swimming." Dr. Tseng reported that McIntyre "continues to do well, stable." (Hittler Aff., Ex. 10(c), RSL 844-45).

(e) a March 9, 2015 background check indicating that McIntyre was an active dog breeder and a member of a dog club, was active physically, traveling to town frequently with friends, and out of town for dog-related activities, was driving unhindered. (Hittler Aff., Ex. 14, RSL 1396-1404).

(f) surveillance in June 2015 showing her driving to the Key City Kennel Club, shopping, performing various lawn and gardening activities, and driving to a salon. (Hittler Aff., Ex. 13, RSL 916-27).

(g) Dr. Tseng's July 21, 2015 office note reflecting that her condition was "stable" and not to be in acute distress. (Hittler Aff., Ex. 15(b), RSL 991-92).

(h) On June 9, 2015, McIntyre was seen by Dr. Scott Stevens for injuries suffered while breaking up a dog fight on June 7, 2015. (Hittler Aff., Ex. 15(a), RSL 978-79).

(i) The Residual Employability Analysis prepared by Vocational Consultant Carol Vroman concluded that McIntyre would be qualified to perform a number of occupations at a sedentary to light work activity level: Hospital Admitting Clerk, Utilization-Review Coordinator, Cardiac Monitor Technician, Office Nurse, and Unit Nurse. (Hittler Aff., Ex. 16, RSL 1003-17; 1004).

(j) Nurse Bergstrom's file review of December 15, 2015 which concluded that "light R & L [restrictions and limitations] appear supported." (Hittler Aff., Ex. 17, RSL 284-85).

Reliance Standard also obtained even more information supporting its initial decision in the course of reviewing McIntyre's appeal, in the form of Dr. Bushara's December 2016 IME report and the updated Residual Employability Analysis. (Hittler

9

Aff., Ex. 21, RSL 1261-80; Ex. 22(h); Ex. 24, RSL 1180-84). Dr. Bushara concluded following his examination of McIntyre and completion of a Physical Capabilities Questionnaire that she had the functional ability to work in a sedentary occupation, and the Employability Analysis identified seven sedentary-level occupations McIntyre could perform based on her education, training and experience.[9]

Under any measure of reasonableness, Reliance Standard obtained and reviewed a plethora of evidence reflecting that in spite of her medical condition, McIntyre was cognitively sound, medically stable, and functionally able to work.

### D. The fact that McIntyre was awarded Social Security Disability Benefits does not bind Reliance Standard.

McIntyre argues that Reliance Standard's decision was unreasonable because it failed to adequately consider the Social Security Administration's ("SSA") disability award. The SSA's decision, while admissible, is not binding on either Reliance Standard or the Court. *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1053–54 (8th Cir. 2011); *Riedl v. Gen. Am. Life Ins. Co.*, 248 F.3d 753, 759 n. 4 (8th Cir. 2001). "[A]n 'ERISA

---

[9] McIntyre places great emphasis on three internal Reliance Standard nurse reviews between 2013 and 2015 which she claims establish that she was unable to work: Nurse DiFalco's November 21, 2013 and February 3, 2015 reviews and Nurse Bickel's May 12, 2015 review (RSL 175-77; Pl.'s Memo., at 21; 26; 27). These reviews were prepared based upon medical information available at the time, and preceded the June 2015 surveillance report, and were conducted at the time Reliance Standard was continuing to pay benefits. Moreover, Reliance Standard was entitled to rely upon the opinions of IME physician Dr. Bushara, based on his December 2016 examination: McIntyre also omits any mention of the content in the October 15, 2015 nurse review (which referred to the surveillance report) which stated, "it appears that EE's activity level is not commensurate with the medical on file, and . . . the Surveillance. . . . It is unclear what is now precluding the EE from [performing] at least a minimum of sedentary work function." (RSL 282; Pl. Memo., at 28).

plan administrator or fiduciary generally is not bound by a[n] SSA determination that a plan participant is "disabled," ' even if the plan's definition of disabled is similar to the definition the SSA applied." *Farfalla v. Mut. of Omaha Ins. Co., 324 F.3d 971*, 975 (8th Cir. 2003) (citation omitted); *see also Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 889 (8th Cir. 2002).

Despite McIntyre's argument to the contrary, Reliance Standard did address the fact that McIntyre had been awarded SSDI benefits, in both its February 5, 2016 initial adverse decision letter and in its December 22, 2016 letter. (Hittler Aff., Ex. 18, RSL 444-49; Ex. 25, RSL 47-76). Both letters pointed out that such an award is not binding upon Reliance Standard because the Social Security Administration may use different guidelines and it may not have the updated medical and vocational information Reliance Standard obtained as a part of its review. (*Id.*, Hittler Aff., Ex. 18, at RSL 449).

McIntyre cannot credibly claim that she met her burden of proof on this issue when her May 31, 2016 appeal did not include any medical evaluations or other findings from the SSA. *See Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872, 877 (8th Cir. 2009) (citing *Hutchins v. Champion Intern. Corp.*, 110 F.3d 1341, 1345 (8th Cir. 1997).

### E.   Reliance Standard did not rely solely upon Nurse Bergstrom's December 2015 report and Dr. Bushara's 2016 IME in its decision.

As discussed *supra* at 9-10, Reliance Standard relied upon numerous records, statements, examinations and vocational analyses in its decision-making process.

Addressing McIntyre's final argument, Nurse Bergstrom's December 15, 2015 conclusion was based on the most recent medical information in the file. In addition, her report was prepared before Reliance Standard's February 5, 2016 initial decision (which is not before the Court). Thus, while Ms. Bergstrom provided a clinical opinion at that time, Reliance Standard obtained Dr. Bushara's IME report which provided an in-person assessment by a board-certified neurologist.

Similarly, McIntyre's criticism of Dr. Bushara's report also misses the mark. His physical examination was entirely consistent with Dr. Tseng's 2014 -15 office visits. Most significantly, McIntyre makes no mention whatsoever of Dr. Bushara's Physical Capacities Questionnaire, which set forth his medical opinion on McIntyre's specific restrictions during an eight-hour workday. In contrast, Dr. Tseng's March 14, 2016 letter – the first and only statement she made supporting McIntyre's claim – contains mostly statements of McIntyre's self-reported symptoms, but none of her August 2011 to July 2015 office visits contain any functional evaluation, any cognitive impairment findings, or any physical restrictions. (Hittler Aff., Ex. 19, RSL 1025).

In short, McIntyre cannot show that Reliance Standard's reliance upon Dr. Bushara's examination and report was unreasonable. *See Parkman v. Prudential Ins. Co.*, 439 F.3d 767, 773 (8th Cir. 2006) (claims administrator did not abuse its discretion by relying on the opinion of an outside reviewing physician); *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 798–99 (8th Cir.2002); *House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001).

As to the argument that Dr. Bushara did not consider McIntyre's subjective reports of pain, he noted in his interview summary that she reported numbness, pain, tingling and restlessness in her hands and feet. (Hittler Aff., Ex. 21, RSL 1262). Nonetheless, his neurological findings and impressions from his interview did not lead him to conclude that her condition prevented her from working in a sedentary position. His findings were in fact consistent with Dr. Tseng's July 21, 2014 office visit report, which noted that McIntyre was very active, continuing to do well, and stable. (Hittler Aff., Ex. 10c, RSL 894-95). They were also consistent with Dr. Tseng's July 2015 office visit, confirming that McIntyre was driving, in no acute distress, alert and oriented, and medically stable. (Ex. 15b, at RSL 991-92). Thus, to the extent that McIntyre had pain and fatigue, neither Dr. Bushara nor Dr. Tseng reflect any objective medical basis on which she would be unable to work. *See Waldoch v. Medtronic, Inc.*, 953 F. Supp. 2d 979, 1004 (D. Minn. 2013), aff'd, 757 F.3d 822 (8th Cir. 2014) ("A plan administrator is permitted to deny disability benefits on the basis of a lack of objective evidence."); *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1041 (8th Cir. 2010) (It is not unreasonable for plan administrator to base denial of benefits on lack of objective evidence). Therefore, Reliance Standard's decision reasonably relied upon Dr. Bushara's clinical observations and McIntyre's motion for summary judgment should be denied.

## III. CONCLUSION

Based upon the above-cited points and authorities, Plaintiff Melissa McIntyre's motion for summary judgment should be denied in its entirety.

NILAN JOHNSON LEWIS PA

Date: 10/22/18                By:   */s/ William D. Hittler*
                               William D. Hittler (No. 153916)
                               Leah N. Kippola-Friske (No. 0395467)
                               120 South Sixth Street, Suite 400
                               Minneapolis, MN 55402-4501
                               Phone: 612-305-7500
                               Fax: 612-305-7501
                               whittler@nilanjohnson.com

                               **ATTORNEYS FOR DEFENDANT**