# EXHIBIT 28

James W. Brandt
Christopher P. Grean

Jerold M. Lucas*
*of Counsel*

# BRANDT LAW OFFICE, P.A.

CLARK
1881

May 31, 2016

Standard Life Insurance Company
Quality Review Unit
P.O. Box 8330
Philadelphia, PA 19101-8330

Re:     Claimant:      Melissa McIntyre
        Policy No:     LTD 121690
        Claim No:      2011-09-27-0051-LTD-01
        Policyholder:  Immanuel St. Joseph's – Mayo Health System

Dear Sirs:

Let this serve as an appeal of the determination made on February 5, 2016, with reference to my client, Melissa McIntyre, regarding a discontinuation of her long-term disability benefits. On behalf of my client, I hereby request a review of this prior determination pursuant to the instructions contained in said letter of February 5, 2016.

Enclosed herewith please find the following documents:

1.      A letter dated March 14, 2016, from the Mayo Clinic Health Care System, Dr. Vanessa Tseng, the treating neurologist for Ms. McIntyre, which confirms that she cannot engage in any gainful employment, even a sedentary position due to her physical limitations.

2.      An employment evaluation report dated May 6, 2016, by Ms. Kate Schrot, a Qualified Rehabilitation Consultant, who has more than 30 years experience and who has been qualified as a vocational expert in both Minnesota and in the United States District Courts. She has testified on numerous occasions with reference to Social Security Disability claims, employment disability claims, where she has been qualified to testify as a Vocational Expert.

3.      A letter from the claimant, Melissa McIntyre, dated May 19, 2016, including her list of twenty (20) current medications.

219 W. Nassau, P.O. Box #57, St. Peter, MN 56082 • Ph: (507)-931-6940 Fx: (507)-931-6909
e.mail: info@brandtlawoffice.com

* MSBA Board Certified Real Property Specialist

RSL001595

May 31, 2016                                                                                                            2

    4.       Seven Testimonial letters from witnesses who are prepared to testify in court.

We respectfully request that you review the above documents which make it clear that Ms. McIntyre's LTD benefits should be reinstated retroactively back to December of 2015, since it is abundantly clear that she is unable to perform the material duties of <u>any occupation</u> due to the multiple physical disabilities that she suffers from as a result of the Charcot Marie Tooth Syndrome.

<u>DEMAND</u>:  On behalf of my client, I hereby demand that her disability benefits be reinstated forthwith pursuant to ERISA 29 U.S.C. 1132(a)(1)B.  We further demand reimbursement for her attorney fees incurred, expert witness fees, together with interest on said benefits wrongfully withheld, and reimbursement of her costs and disbursements.  You are hereby placed on notice that if this matter has to be litigated because you refuse to reinstate said disability benefits, the we will include a <u>claim for punitive damages</u>.

Respectfully submitted,

Jerold M. Lucas

JML/amh

Encls.

RSL001596



**MAYO CLINIC**
**HEALTH SYSTEM**

**Mankato**
1025 Marsh Street
Mankato, Minnesota 56001-4752
507-625-4031
507-385-2925 TDD/TTY
mayoclinichealthsystem.org

March 14, 2016

To Whom it may Concern:

I am writing this letter on behalf of Ms. Melissa McIntyre in order to provide my medical opinion to attest to her limitations due to her condition. I have had the pleasure of caring for Ms. McIntyre since 2011. She suffers from Charcot-Marie-Tooth disorder, a condition that limits her ability to physically function and provides extreme fatigue.

Ms. McIntyre suffers from extraordinary pain. Despite treatments to optimize her functioning, she cannot stay in one position or perform one task for greater than thirty minutes. As her pain becomes too great, she must take frequent breaks from positions and tasks. Ms. McIntyre also fatigues very quickly. She must rest frequently during the day, and again, can only perform a task for minimal time. Any task, even a simple one, can be grueling for Ms. McIntyre. She performs to the best of her ability, but her physical limitations make her tire quickly. Ms. McIntyre unfortunately cannot tolerate long days due to exhaustion. In the case that she does have tasks that she must perform for several hours, Ms. McIntyre must take several days to recuperate.

Her pain and fatigue also inhibit her concentration. As Ms. McIntyre becomes fatigued, she cannot keep focused on her tasks and must take frequent breaks. The loss of concentration unfortunately leads to mistakes in her work. Ms. McIntyre's disorder is progressive. She has had to make many physical adaptations in her daily life to maintain her ability to function. She has progressive weakness and balance issues. She must now walk with an assistive device at times and uses other devices for support.

It is my opinion that Ms. McIntyre cannot engage in any gainful employment, even a sedentary position, due to her limitations. As I have outlined above, her condition severely limits her ability to perform any task for long periods of time. I ask that you consider this letter in determining the status of Ms. McIntyre's disability.

Sincerely,

Vanessa Tseng, MD
Mayo Clinic Health System Neurology

RSL001597
3/14/2016 4:33 PM



# STUBBE & ASSOCIATES
Results You Can Measure

May 6, 2016

Jerold M. Lucas
Brandt Law Office
219 West Nassau St.
PO Box 57
St. Peter, MN  56082

Re:   Claimant:    Melissa McIntyre
      Policy No:    LTD 121690
      Claim No:     2011-09-27-0051-LTD-01
      Policyholder: Immanuel St. Joseph's – Mayo Health System

Dear Mr. Lucas:

At your request, I am preparing an Employability Evaluation of Ms. McIntyre.

## Background Information

Ms. McIntyre was born on 5/3/70.  She is currently 46-years old.  Ms. McIntyre has been diagnosed with Charcot Marie Tooth Syndrome.  As a result of this medical condition, she was placed on short-term then long-term disability starting on July 20, 2011. According to the United States National Institutes of Health, Charcot Marie Tooth Disease is a group of progressive disorders that affect peripheral nerves and can result in loss of sensation and atrophy of muscles in the feet, legs, and hands.

Ms. McIntyre's highest level of education attained is an Associate's Degree in Nursing. Ms. McIntyre's former employment in nursing would be considered skilled work that is typically performed at the medium level of exertion.  Past work as a nanny would be considered semi-skilled work with medium physical demands.

## Medical Evaluation/Restrictions

Ms. McIntyre treats with Vanessa Tseng, MD a neurologist at Mayo Clinic Health Systems Mankato.  She has been providing care to Ms. McIntyre since 2011.  In a letter dated 3/14/16, Dr. Tseng opined Ms. McIntyre is not able to engage in any gainful employment, not even a sedentary position.  She supports her opinion with the following information:

1. Ms. McIntyre suffers from extraordinary pain.
2. She is unable to stay in one position or perform one task for greater than 30 minutes.
3. She must take frequent breaks from positions and tasks because of the pain.
4. She must rest frequently during the day.

RSL001598

Mr. Jerold M. Lucas – Page 2
RE: Melissa McIntyre
May 6, 2016

5. Her physical limitations make her tire quickly.
6. Ms. McIntyre cannot tolerate long days due to exhaustion.
7. If she does have to perform a task for several hours, it results in the need to take several days to recuperate.
8. Pain and fatigue affect concentration, resulting in the inability to stay focused on tasks and the need to take frequent breaks.
9. The disorder is progressive and she has progressive weakness and balance issues.
10. She must walk with the use of an assistive device at all times.

## Self-Report of Activities of Daily Living

I interviewed Ms. McIntyre on two occasions; once by phone and once in person. I asked Ms. McIntyre to describe a typical day, as well as her level of activities on a regular basis. Ms. McIntyre lives alone in a home she owns in Mankato, MN. Family lives very nearby and assists Ms. McIntyre on a frequent basis. Ms. McIntyre indicated the most important factor for her is to do things at her own pace. She noted it is difficult for her to get in and out of the bathtub. She has to sit down in order to get dressed and does her hair while sitting. She mentioned that in order to blow dry her hair, she has to take breaks because of pain and fatigue in her arms. She is able to do light cleaning around her home at her own pace, but even doing simple tasks like dusting can result in an extreme increase in pain. She mentioned she only dusts when it is absolutely necessary. She stated since she lives alone, it is easier for her to do things at her own pace since others are not relying on her to keep the house clean, do the laundry, or prepare meals.

Ms. McIntyre mentioned it is difficult for her to do a lot of cooking because standing at the countertop to prepare a meal increases the pain in her feet. When she does cook, she makes very simple things, such as a grilled cheese sandwich. She also said her parents bring over leftovers that she just reheats. If she does have to do cooking, she will do it in stages with frequent breaks. If she spends any time preparing a meal, she will be extremely fatigued and need to rest for 1-2 hours.

Fatigue seems to be one of the most limiting factors that she has to deal with. She mentioned she will have to rest for 10-15 minutes after taking a shower. Ms. McIntyre stated on good days she can perform an activity for 1-2 hours, but that type of day only occurs once a month or less. At least once or twice per week she is so fatigued and in so much pain she will basically spend the entire day resting.

Ms. McIntyre has been involved with the Mankato Key City Kennel Club. She has taught classes and been involved with obedience training, agility, and confirmation. She has two German shepherd dogs, one is her assistance dog. Since dog training is one of the things she really loves doing, she continues to try to do what she can and be as involved as she can. She teaches a class on Wednesday mornings, but has a substitute available to assist her, or even to take over the class if needed. She also is able to teach the class from a seated position if she needs to. She stated that teaching

RSL001599

Mr. Jerold M. Lucas – Page 3
RE: Melissa McIntyre
May 6, 2016

this class gives her purpose and enjoyment. She also enjoys going to dog-related events in Minneapolis. Again, her attendance at this type of activity is based on how she is feeling. If she is having a good day, she will go. If she wakes up and is not doing well that day, she will not go to the event. Ms. McIntyre said her own dogs are very well trained and they respond to hand signals and verbal commands. She has a treadmill in her home to provide exercise for her dogs since she is not able to take them for the kind of walks they need.

Ms. McIntyre's family checks on her daily to make sure she is okay and to see what kind of help she might need. For example, she has help with laundry because the laundry room is located in the basement. Family helps with lawn and garden activities, cleaning, and anything else she might need.

Ms. McIntyre indicated she generally gets up between 8:30 a.m. and 9:00 a.m. She will have a simple breakfast, get dressed, and feed her dogs. Ms. McIntyre stated she tries to get one chore done each day. For example, she might spend 30 minutes on the computer doing something like balancing her checkbook or doing a household task. If she has a medical or some other type of appointment, she will only do one appointment in the day. She stated she spends most of her time watching television and resting. The length of the rest period will depend on how she is feeling on any particular day. If the weather is nice, she may spend a little bit of time outside. She will spend the majority of her time resting throughout an average day. Her lunch and supper are generally simple meals or reheated items that she puts in the microwave. Ms. McIntyre will go to bed between 7:30-8:30 p.m. She will then watch television in bed for a couple of hours before she goes to sleep.

If she feels able to teach the training class for dog owners, she will generally rest before and after. If she goes to an event in the Twin Cities, she will stop several times and rest. It is about 80 miles to downtown Minneapolis from Ms. McIntyre's home. If she does attend an event in the Twin Cities, she might need to rest for most of the next 2-3 days because of increased pain and fatigue.

## Self-Reported Functional Limitations

Ms. McIntyre described difficulties with the following functional activities:

1. Walking. She is unable to walk around a block because of foot pain, which is related to neuropathy. She uses a cane to walk because of balance concerns. She also wears ankle foot orthoses (AFO) to help with balance. She has difficulty walking on uneven ground.
2. Standing. She is able to only stand for brief periods of time before she has to take a break to sit down. She mentioned she cannot stand probably more than 5-10 minutes. This standing increases foot and back pain.
3. Sitting. This is difficult and can only be performed for brief periods of time before she needs to change positions. Sitting increases back pain. She did not think she could sit even for an hour. If she was able to change positions between

Mr. Jerold M. Lucas – Page 4
RE: Melissa McIntyre
May 6, 2016

    sitting and standing, she could only do this a couple of times before she would
    have increased fatigue and would need to lie down.

4. Lifting/Carrying. Because of pain and neuropathy in her hands, especially the left
hand, she does not carry or lift anything unless she has to. When she does have
to lift or carry something, it would be only items that she could lift with one hand
since she is using a cane, and she would only be able to do it for a few times and
for a short duration. She would only lift items that weigh one pound or less.

5. Bending/Twisting. These activities are difficult and avoided because of problems
with balance. She will use a grabber to pick things up from the floor or she will
use her service dog to assist her.

6. Handling/Fingering. Ms. McIntyre has neuropathy in both hands. The left hand
is weaker but the right is also affected. She does drop things with either hand.
The neuropathy makes it difficult for her to keyboard without making a lot of
errors. She can only keyboard for brief periods of time.

Ms. McIntyre also mentioned increased stress resulted in increased pain and increased
fatigue and reduces her ability to function even further. She has noticed over the past
couple of years there has been a progressive worsening of fatigue and pain.

Ms. McIntyre stressed to me she works very hard to stay as active as possible and
continued to do some of the things she loves to do, such as having a garden and
working with dogs. She said these kinds of activities, especially dog handling, are only
about 20% of what she used to do. She continues to try to do things that result in
increased pain or fatigue for her own mental health. She is trying to avoid becoming
extremely depressed by not doing any of the things she enjoys rather than sitting
around and dwelling on her limitations. Instead, she would rather try to do things and
do them very slowly or only for very short periods of time so she does not miss out
completely on activities that bring her joy and purpose in her life.

**Employability/Discussion**

The ability to work requires an individual to be able to report to work as scheduled,
perform the job duties that are required by an employer throughout the work day to the
satisfaction of the employer, and then return the next day. Essentially, if you work a 40
hour week you need to be able to perform the work activities regardless of the job or the
physical demands for an eight hour day, five days per week. A typical work day
includes two 15-minutes breaks and a 30-45 minute lunch break. In order to maintain
employment, an employee must be able to meet those basic requirements.

It is important to understand that the determination made by Reliance Standard in the
letter to Ms. McIntyre dated 2/5/2016 is based on a computerized Residual
Employability Analysis dated 12/16/2015. That analysis used Ms. McIntyre's past work
history and light work to run the computer analysis OASYS. These computerized
programs attempt to match skills and abilities while limiting the physical demands. The
problem with computerized analyses are several including the fact that they are based
on the Dictionary of Occupational Titles. This is a publication of the U.S. Department of

Mr. Jerold M. Lucas – Page 5
RE: Melissa McIntyre
May 6, 2016

Labor that is no longer updated. As a result matches are made based on job descriptions that are often outdated. For example the description for Nurse, Private Duty was last updated in 1977. The job matches identified in this Residual Employability Analysis were last updated between 1987 and 1993. None of this takes into account the significant changes that have taken place in the medical field, specifically electronic medical records and the use of computers. As a rehabilitation counselor I use computerized analysis programs such as OASYS but running the program is only the first step in evaluating employability. When I get the computerized printout I have to go through it and determine whether the jobs still exist in today's economy, if the descriptions are accurate and then look closer at the individual's physical abilities and the physical demands of the job matches. In many cases the physical abilities are not a perfect match to the U.S. Department of Labor definitions of the physical demands of work. When there is a deviation of the definition any matches resulting from a computerized analysis have to be explored further to determine appropriateness. Transferable skills analysis programs are a tool that is a part of the process of career exploration and should not be used without further evaluation of the results by the counselor who has knowledge and experience with the client and the world of work. They were not meant to be used in a vacuum, nor should they be used as absolute proof of employability.

Based upon what the treating neurologist, Dr. Tseng, has said, Ms. McIntyre is not even able to meet the basic requirements for work, even at the sedentary level of work. Ms. McIntyre's description of her limitations, especially as they relate to fatigue and pain, correspond with what Dr. Tseng outlined in terms of her ability to function. It is important to keep in mind the fact that even though an individual can demonstrate the ability to do something once in a day, or has a good day where she can do more that does not demonstrate the ability to perform a job for an eight hour work day. For example, the insurance company surveillance lists a number of activities performed by Ms. McIntyre on particular days, it really does not demonstrate any kind of level of activity. For example, on 6/10/15, she apparently spent several hours at the Key City Kennel Club and then returned home for the rest of the day. That does not indicate what type of activity she was doing nor does it demonstrate she could do this on an on-going basis. On 6/24/15, the surveillance showed Ms. McIntyre again spent a couple of hours at the Kennel Club and then did some shopping. This does not define how many hours or the type of activity she was performing during this time. The fact that she was seen on one occasion doing some light gardening for a short period of time again does not demonstrate ability to sustain activities for an eight hour work day. The surveillance also cites another instance on 6/25/15 where Ms. McIntyre spent some time at a hair salon and then was later seen lifting two small yard ornaments with her right hand and carrying a broom in the left arm. She was also observed bending, twisting, pushing and pulling objects without apparent difficulty. Again this doesn't demonstrate the ability to perform an eight hour work day. Ms. McIntyre has not said she is unable to do isolated light activities. Her physical problem involves sustaining these activities over a long period of time, such as a work day.

RSL001602

Mr. Jerold M. Lucas – Page 6
RE: Melissa McIntyre
May 6, 2016

Regular attendance at a job is mandatory in order to keep the job. At best, an employer is going to allow one day or less of absenteeism per month and even have questions about that if it continues on a regular basis. By Dr. Tseng's description and Ms. McIntyre's description, she has good and bad days that are unpredictable and as a result of the pain, fatigue, and impact on her concentration, she is not able to sustain a regular work day.

In my opinion, the medical records support Dr. Tseng's opinion that Ms. McIntyre is not capable of maintaining regular employment in any capacity, even at the sedentary level of work. Ms. McIntyre's own description of her level of functioning and her limitations further back up what Dr. Tseng has stated.

My opinions are based on a reasonable degree of vocational certainty. My opinions are also based on my 35 years' experience as a rehabilitation counselor where I have worked with individuals with various medical conditions and developed rehabilitation plans to determine employability and coordinate return to work whenever possible. I have been qualified as a vocational expert and testified on employability matters in Social Security Disability hearings, Minnesota worker's compensation hearings, Minnesota District Court and US Federal Court.

CONCLUSION:
In my opinion, Ms. McIntyre is not capable of sustaining any type of employment, even at the sedentary level, as a result of a combination of the factors that are a result of the Charcot Marie Tooth Syndrome. The combination of factors that includes fatigue, pain, neuropathy in the hands and feet, and the impact on her concentration are such that she would not be able to maintain any type of employment.

Sincerely,

Kate Schrot, M.S., CDMS
Rehabilitation Consultant
KS/lmb

## VITAE

### Kathryn A. Schrot

Stubbe & Associates
PO Box 1893
North Mankato, MN 56003
507-388-8872

## EMPLOYMENT

| | |
|---|---|
| 7/2000-present | Rehabilitation Consultant and Vocational Expert<br>Stubbe & Associates, Mankato, MN |

- Provide disability case management services at the request of insurers,
  employers, attorneys and others
- Provide vocational evaluation, counseling and placement to persons with various types of illness, injuries and disabilities
- Conduct job analyses and worksite evaluations
- Provide recommendations on worksite modifications and accommodations
- Perform labor market analyses
- Administer and interpret vocational tests
- Conduct expert witness evaluations and provide testimony in:
  Workers' Compensation hearings
  Civil Courts
  Social Security Disability hearings
  Divorce proceedings
  Equal Opportunity cases involving disability status

| | |
|---|---|
| 1/98-7/2000 | Rehabilitation Consultant and Vocational Expert<br>Novaeon, Inc. Mankato, MN |

## EDUCATION

| | |
|---|---|
| 1981 | Master of Science in Vocational Rehabilitation Counseling<br>University of Wisconsin, Madison, Wisconsin<br><br>Graduate research involved working with Dr. George N. Wright to revise a chapter of the second edition of his textbook, <u>Total Rehabilitation</u> |
| 1973 | Bachelor of Science in Psychology and History<br>University of Wisconsin, Stevens Point, Wisconsin |

RSL001604

Page 2 of 3
Kathryn Schrot

## CERTIFICATIONS/CREDENTIALS

| | |
|---|---|
| 1993-Present | Certified Case Manager (CCM) |
| 1985-Present | Certified Disability Management Specialist (CDMS) |
| 1981-Present | Qualified Rehabilitation Consultant-MN (QRC) |

## OTHER RELEVANT EMPLOYMENT

**4/89-12/97**   Rehabilitation Consultant
Van Wagner & Associates, Mankato, MN
- Provide disability management, evaluation and placement services to persons with disabilities

**7/92-7/93**   Adjunct Faculty Member
Mankato State University, Mankato, MN
- Taught graduate course on propriety rehabilitation

**5/81-4/89**   Rehabilitation Consultant
Crawford Health and Rehabilitation, Mankato, MN
- Provide disability case management, evaluation and placement services to persons with disabilities
- Trained employers to recognize those needing referral to an Employer Assistance Program

**4/78-5/81**   Psychiatric Attendant
Dane County Hospital, Verona, WI
Responsible for teaching activities of daily living to adults with
- Developmental disabilities and/or psychiatric illness
- Developed goal oriented plans for each individual to assist them to develop independent living skills
- Implemented treatment plan in cooperation with nursing, medical and other professional staff

## OTHER RELEVANT EDUCATION AND EXPERIENCE

**1993**   Conversational Spanish

**1986**   Employee Assistance training
Crawford & Company, Atlanta, GA

RSL001605

Page 3 of 3
Kathryn Schrot

## PRESENTATIONS

1996   Council on Education in Management Workers Comp Update 1996, "Flexible Return to Work Bridge the Gap Between Injury and Full Duty"

1995   Department of Labor and Industry (DOI), Presentation to Review Panel, "Effective Use of Job Placement Services in Rehabilitation"

1989   North Star Chapter, National Multiple Sclerosis Society, Job Retention and Job Placement Services for Progress with Multiple Sclerosis presented to Group Facilitators

1985   Southern Minnesota Legal Services, The Role Of Vocational Expert In SSDI Hearings, training session for attorneys

## VOLUNTEER ACTIVITES

1994   The Southern Minnesota Rehabilitation Group, Board Member and Organizer

## CURRENT PROFESSIONAL MEMBERSHIPS

Minnesota Rehabilitation Counseling Association
American Counseling Association
Minnesota Association of Rehab Providers
National Association of Rehabilitation Providers in the Private Sector

RSL001606

*Curriculum Vitae*

# *Kate Schrot, MS, CDMS, QRC*



*Kate is exceedingly skilled with complex vocational and medical cases. She holds a degree in Psychology and an advanced degree in Vocational Rehabilitation. Since 1985, Kate has served as a vocational expert for the Social Security Administration. Before an Administrative Law Judge she testifies, as a neutral expert, as to employability of Social Security applicants in MN, IA and (by phone) Ohio. She is also an experienced Expert Witness in Workers' Compensation court, civil court, personal injury, FELA and marital dissolution. She researches and evaluates file disputes up for settlement and gives individual testimony on employability and earning capacity.*

*Kate joined Stubbe & Associates in July 2000. She is a Master's Degree Case Manager and highly practiced Qualified Rehabilitation Consultant.*

*Kate covers Southern Minnesota and the Twin City metro area as needed.*

| | |
|---|---|
| **EDUCATION:** | **MS**   Master of Science, Vocational Rehabilitation, University of Wisconsin, Madison<br>**BS**   Bachelor of Science, Psychology and History, Univ. of Wis., Stevens Point |
| **CREDENTIALS:** | **QRC**   Qualified Rehabilitation Consultant<br>**CDMS** Certified Disability Management Specialist |
| **PROFESSIONAL AFFILIATIONS:** | **MARP**  Minnesota Association of Rehabilitation Professionals<br>**IARP**  International Association of Rehabilitation Professionals<br>**Union Construction Worker's Compensation Program Approved** |
| **WORK HISTORY:** | <u>Stubbe & Associates, Inc</u>. **– Vocational Expert / Qualified Rehabilitation Consultant**<br><br>Minnesota State University, Mankato - Adjunct Faculty Member<br>Crawford Rehabilitation – Qualified Rehabilitation Consultant<br>Van Wagner and Associates – Qualified Rehabilitation Consultant<br>Novaeon – Qualified Rehabilitation Consultant |
| **AREAS OF PRACTICE:** | <ul><li>Expert vocational testimony</li><li>FELA</li><li>Ergonomic evaluation/consulting</li><li>Social Security</li><li>Marriage dissolution</li><li>Personal injury</li><li>PTD assessments</li><li>Transferable skills analysis</li><li>Job analysis</li></ul> <ul><li>Vocational assessment/consulting</li><li>Short & long-term disability evaluation/management</li><li>Medical case management</li><li>Disability case management</li><li>Catastrophic case management</li><li>Job seeking/interviewing skills</li><li>Labor market survey</li></ul> |
| **SERVICE AREA:** | Minnesota, Southern Minnesota , and the Twin City Metro |



**STUBBE & ASSOCIATES**

Results You Can Measure
1-800-478-8223

RSL001607

*From the Desk of Melissa McIntyre*

May 19, 2016

Standard Life Insurance Company
Quality Review Unit
P.O. Box 8330
Philadelphia, PA 19101-8330

Re:  Claimant:     Melissa McIntyre
     Policy No:    LTD 121690
     Claim No:     2011-09-27-0051-LTD-01
     Policyholder: Immanuel St. Joseph's – Mayo Health System

Dear Sirs:

I am requesting by this letter a review of the determination made by the Reliance Standard Life Insurance Company with reference to my long-term disability insurance policy through Immanuel St. Joseph's – Mayo Health System in its letter dated February 5, 2016.

In this letter I will state reasons why I feel that said determination dated February 5, 2016, was incorrect. This letter should be read in conjunction with the enclosed letter dated March 14, 2016, from my treating Neurologist, Dr. Vanessa Tseng, MD of the Mayo Clinic Health System; together with the narrative report from Ms. Kate Schrot, a Qualified Rehabilitation Consultant. In this letter, I hope to be able to clarify some of the confusing and inaccurate opinions which were contained in said letter.

As the doctors have stated, my disease is a progressive one. I have found that with each passing month, and certainly with each passing year, my condition is getting worse. While previously I was able to do many things with respect to training dogs, now I am simply unable to do much. For example, I now have to use a chair for balance or have to sit down to do the training. It now amounts to just a few minutes here and there that I am able to train. My left hand condition has gotten much worse the last two years, the neuropathy started at my knees, then went up my legs and is now affecting my hands (both hands). This is what I understand to be the normal progression of the disease. I find that I am using either an assistive device, to pick up things or use my service dog to help. I now have a tremor in my left hand and have a lot of trouble with fatigue. My keyboarding skills are getting worse and worse. I find that I have more and more spelling and typing errors. Many times I simply have to stop the keyboarding and lay down. On a normal morning, I will rest at least one-half, if not one hour, each morning. I manage to get up and get started with my day but then I must take my drugs to reduce the constant pain and I am unable to do anything until the drugs "kick in" to dull the pain. Then at about 1:00 p.m., it is like

May 19, 2016                                                                2

a light switch goes off and I am physically unable to do anything active the rest of the day.  I have to rest and relax to bear the constant pain.

I now have AFO's on both my ankles.  I use a cane or a walker, although sometimes I try to go without.  My next visit to the Podiatrist is in June.  I am trying to work on my balance but I find that I am using a cane more and more.

The paperwork from the Insurance Company made it sound like I was regularly doing respite care.  In fact, I was only helping out my sister by babysitting my young niece and nephew, who are autistic, but very self-reliant.  Several times for about two hours during the week, I watched my niece and nephew; helped them get snacks; watched TV with them; drew and colored pictures with them; played games and did things that did not require any exertion.  Many times I had to cancel our plans because I was having a bad day and unable to assist my sister.

In the papers from the Insurance Company, they talked about observing someone who appeared to be "walking normally."  If they saw someone walking like that, they certainly were not observing me.  My gait is anything but normal.  I frequently have to use my cane.  I many times will use my service dog for support.  She does most of her work inside of my home, although I sometimes bring my dog into the store if I feel I will need help.  My dog helps me pick up things and helps to steady myself if I am losing my balance.  If I fall, she helps me to get up.  I certainly do not make any money from selling dog toys.  It is not a business.  About a year ago, I tried to make toys to sell, but found it too hard to make the toys and I gave up on the idea.

The pages that the Insurance Company copied from my website do not mention anything about my disability.  Most of the photographs and noted accomplishments were from years ago, or they refer to customers or friends who acquired dogs from my bloodlines.  The writer implies that sometime ago, I did dog breeding but that is not true.  I simply owned the stud for the first two litters.  I only have an occasional litter now as part of my hobby.  This never was a business!  I have not done any full-time or part-time work of any kind since July 21, 2011, when I first went on disability.  Since that time, I have qualified for Social Security total disability.  There is no way that I can do any nursing work.  I cannot transfer patients; I cannot not even any longer perform CPR.  I simply have an Associate Nursing Degree, not a BA or BS degree.  Now, every day is a challenge.  Every day presents many difficult situations for me to overcome.  Every day has pain and suffering.  Since I have been suffering with this condition from birth, I have tried to adapt and have tried to cover up so people do not see my pain, but that pain is only getting worse by the day.  The investigator hired by the Insurance Company talks about talking to some unidentified male located at 935 Charles Avenue, which address is in my neighborhood, however, I have never met the individual living there and there is no way that he could have any information about me or my medical condition.  The paperwork shows a picture of me holding a clouded leopard in the mid-1990's while I was a Vet Tech.  The paperwork implies that I went to the 2014 AKC National Rally at Pennsylvania with my dog, however, I never attended that Rally since I was not able to travel that distance.  The paperwork shows a picture of my dog, Ceyla, doing protection work, however, someone else is handling my dog in that photograph since I was not able to do so.  The paperwork implies that I am a seller of leashes, water dispensers and

May 19, 2016                                                                                                   3

waste bags since they saw a "for sale sign" in a newsletter. This was not a business; it was simply garage sale items that I was offering to the members of the club on a one-time basis. There were inaccuracies in the so-called "court cases" referred to in the paperwork. There was only one case involving Mick Lang, not three. The Walgreens matter was not me, it must have been someone else. And the Green Energy Products matter was just one case not two. My attempt at marketing through "Better Days Ahead" never amounted to anything since I was not able to sell anything. When I "baby-sit" my friend's dog two or three times a year when they go on a trip, this is not and was not a business as implied in the company paperwork. Similarly, there is no way that I do "dog training throughout the year." This is simply untrue. I do not do lawn mowing, snow shoveling, or other outside work, although I would like to.

When I am able to go to the Kennel Club and teach a class, I do so by having a chair in the middle of the ring so I can hold onto it for balance and sit down as needed. After the class, in most cases, I go home and rest. Sometimes I am able to stop on the way home to run a quick errand, but I must rest for the balance of the day. In some cases, I have to rest for the next day or two! I rest at home because I have to. The fact that on June 25, 2015, I went to my appointment at the hair salon to have my hair cut and then returned to my residence to lift two small, light yard ornaments for only four minutes while carrying a broom does not show that I am able to perform material duties of any occupation. I do not want to give up and "throw in the towel," but I find that I am using my cane, my mother's walker, and the store motorized scooter with much more frequency. I am using my AFO's all the time. I have difficulty sleeping and yet when I am awake, I have trouble focusing and staying on task. I have to take frequent naps in the morning and the afternoon. I have trouble driving my motor vehicle. I get fatigued very easily even though I am trying to keep up my stamina. My activities with the dogs have been my hobby and I think it keeps me somewhat active. It is in no way a business and it does not create any sort of positive monetary income.

IN CONCLUSION, I would respectfully appeal the denial of my disability benefits dating back to December, 2015. I request that said determination be reversed and that my disability benefits be reinstated. I further request and demand that I be reimbursed for the expenses that I have incurred in order to process this appeal since this denial of benefits should never have occurred in the first place. I demand reinstatement of my benefits, together with interest, and reimbursement of my attorney's fees and expert witness fees for Ms. Kate Schrot, QRC, together with reimbursement of my costs and disbursements herein.

Respectfully submitted,

Melissa McIntyre
929 Charles Avenue
Mankato, MN 56001

# Sheet1

| | A | B | C |
|---|---|---|---|
| 1 | Medication | How taken | Usage |
| 2 | gabapentin 300 mg | 600 mg am 600 mg afternoon, 900mg bedtime, and 300mg PRN | neuropathy, nerve pain control |
| 3 | tramadol 50mg | 50mg BID, PRN | pain |
| 4 | omaprazole | qd | occ. gastristis from medications |
| 5 | sprintec 28 day | qd | helps with menstral cycles |
| 6 | cyclobenzaprine 10mg | PRN up to TID | back pain/muscle relaxer |
| 7 | | | |
| 8 | alpha lipoic acid 200mg | qd | per Dr. Tseng to help plateau CMT |
| 9 | Co Q10 200mg | qd | per Dr. Tseng to help plateau CMT |
| 10 | omega 3 1000mg | TID | per Dr. Tseng to help plateau CMT |
| 11 | vitamin C 1000 IU | qd | per Dr. Tseng to help plateau CMT |
| 12 | resveratrol 1000mg | BID | per Dr. Tseng to help plateau CMT |
| 13 | | | |
| 14 | Asprin 81mg | qd | preventative |
| 15 | vitamin D3 | qd | preventative |
| 16 | cranberry 4200mg | qd | preventative |
| 17 | docusate sodium | qd | stool softner |
| 18 | triflex (glucosamine/chondroitin/MSM | qd | joint supplement |
| 19 | multivitamin | qd | preventative |
| 20 | | | |
| 21 | naproxen sodium220mg | PRN usually every evening | pain control |
| 22 | ibuprofen 200mg | 2-3 tabs PRN | pain control |
| 23 | tylenol 500mg | 1-2 tabls PRN | pain control |
| 24 | tums | PRN | upset stomach |

RSL001611

5/27/2016 2:37 PM

To Whom It May Concern:


I have known Melissa for more than 20 years. When we first met, Melissa was an energetic, very active person. We spent most of our time on physical activities, such as canoeing, rock-climbing, hiking, and swimming. Now, her physical condition prohibits most of these activities. If we go on a short walk or shopping at the mall, she needs the rest of the day to recover. In the past, she handled her dogs at events. These days, someone else has to do the handling for her, especially for events that require more than verbally directing the dogs. We have had many conversations about how she wishes that her CMT had not presented so severely, how much she misses work and other activities. As a mandated reporter, I am required to report any known or suspected fraud or abuse. I take this responsibility very seriously and only write this because of the concrete, qualitative, and quantitative changes I have personally witnessed in Melissa's abilities.


Elisabeth Aiken


520 E. 5th St

Redwood Falls, MN 56283

320-444-8115

bethaiken@icloud.com

To  Whom It May Concern;

I have known Melissa for about 7 years and in that time I have seen her disablilities continue to get worse.  She has a harder time getting up and down
stairs needing stair rails to keep her balance and even at her home the stairs height are difficult.  I have also noticed her energy level is decreased and after short
periods needs to rest.  If she over does it there is times she takes several days to recover due to pain and weakness.  When I have stayed over at her
home she does best doing thing around the home in short periods with rest inbetween and has to plan her day around needed rest periods.

Sincerely
Anna Asmussen
2125 old Hwy 141
Bronson, IA 51007
E-mail
twohorse7@yahoo.com

RSL001613

March 17, 2016

To Whom it may Concern:

I would like to write to you in regards to my sister, Melissa McIntyre. Melissa suffers from CMT (Charcot-Marie-Tooth), this condition has become much worse over the past few years. It affects her day to day life. She is in a lot of pain, she gets tired very quickly, and she does not have good balance. My family has had to help Melissa with many chores such as: cleaning her bathroom, dusting, shoveling her driveway, weeding her flower beds, buying softner salt and putting it in her water softener, etc. She has also had to start wearing leg braces in order to help with her feet and legs.

Although Melissa does try and do what she can to maintain her house and yard she must take frequent breaks to lie down. And if she has to do something for an extended period of time or has a busy day it will take her several day to recover.

From my understanding of this disease it will only get worse. I truly do not see how she could work, as she can't know when she will have a good day or bad day. In addition to that she wouldn't be able to work a full or even half shift because she would need to take lots of breaks. I would also worry about her getting tired and losing her balance as fatigue makes this worse.

Please take this letter into consideration when determining her status of disability.

Sincerely,

Michelle Lowrie

RSL001614

Jolie Davis
29886 Mohican Circle
Breezy Point, MN 56472
Hm: 218-562-5900
Cell: 218-820-7677

To Whom It May Concern:

I have known Melissa McIntyre since 1988 and have seen a very noticeable change in her capabilities and health in the last three years.  Two years ago she struggled to go for a short walk with me due to balance problems.   Last year in April 2015, I witnessed her lose her balance in her home.   Melissa does not feel safe driving very far anymore and often will need to stop and sleep before reaching her destination.   She now suffers from sudden exhaustion which I have witnessed while staying with her.

I would be willing to testify to the above statements and answer any questions you may have regarding the decline in Melissa's health and capabilities.

Sincerely,


Jolie Davis

RSL001615

To whom it may concern,

I have know Melissa McIntyre for 25 1/2 years now. Over time I have seen many major changes in her physical condition. In the past we had a very busy, active friendship. Due to her medical problems, she is no longer able to do such activities for she tires easily & it is difficult for her to get around. I have seen after a long day she is so exhausted that she is laid up for days. Driving any distances is also hard for her which limits her capabilites of getting to places on her own.

Tonia Heller
11840 Pokegama Lake Rd
Pine City, Mn 55063
320-629-2103

RSL001616

To Whom It May Concern.


I am Melissa McIntyre's Father.  Because of the past five years or so, Melissa has become weaker and needed help from her family.  I am able to help out with her needs. A mow her lawn for her and help with weeding etc.  We have a family garden in her back yard and I built the garden in sections by raising them up four feet so it will be easier for her to get to for picking vegetables.  I come an weed it for her.  In the winter I am there to help shovel her driveway.  I built her more steps in her garage and a handrail to make it easier for her to get into the house.


I will be there and always do everything I can for my daughter.  I am so proud of her, she does what she is able to do to the best of her abilities.  Seeing that her condition is becoming more debilitating for her, breaks my heart. As always, Melissa will meet her future challenges with every bit of strength she can give.


Charles McIntyre

2512 Crystal Cove Road

Madison Lake, Mn. 56063

Phone No. 507-380-8243

RSL001617

To Whom It May Concern.


I am Melissa McIntyre's Mother.  Melissa put herself through Nursing school and graduated with honors.  She has always been aware of her limitations, and yet, has always continued on with the best of her ability.


About six years ago, I began noticing small things with her.  She always tries out easily and would have to rest, walking tired her out, getting out of chairs was more difficult for her.  I am able to help out with small chores, like dusting.  In the summer I like to pull her weeds by sitting in the seat of my walker.


As Melissa's Mother, I am devastated that her disease has progressed as rapidly as it has.  It hurts me deeply that again she needs AFO's to help her walk.


I am so proud of my daughter from a child onward, she has accepted her CMT with graciousness, dignity and determination.


Janet McIntyre

2512 Crystal Cove Road

Madison Lake, Mn. 56063

Phone No. 507-508-0183

RSL001618