UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

MELISSA A. MCINTYRE

                                          Civil No. 17-5134 (JRT/DTS)

              Plaintiff,

v.                               **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

RELIANCE STANDARD LIFE
INSURANCE COMPANY

              Defendant.

---

Katherine L. MacKinnon and Nicolet Lyon, **LAW OFFICE OF KATHERINE L. MACKINNON**, 2356 University Avenue West, Suite 230, St. Paul, MN 55114, for plaintiff.

Leah N. Kippola-Friske and William D. Hittler, **NILAN JOHNSON LEWIS PA**, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for defendant.

Plaintiff Melissa A. McIntyre brought this Employee Retirement Income Security Act ("ERISA") claim against Defendant Reliance Standard Life Insurance Company ("Reliance"). McIntyre received long-term disability benefits from Reliance for approximately four years. Reliance terminated those benefits after review of McIntyre's case and determination that she no longer qualified as disabled. McIntyre appealed, and Reliance upheld its denial of McIntyre's benefits. McIntyre then brought the instant action for denial of her appeal and benefits under an ERISA plan. The Court will apply a de novo review to Reliance's denial of McIntyre's appeal. Because the evidence supports a finding

of disability, the Court will grant McIntyre's Motion for Summary Judgment and deny Reliance's Motion for Summary Judgment.

## BACKGROUND

McIntyre was employed by Mayo Clinic Health System as a nurse at a Mayo Hospital starting from December 2003. (Compl. ¶ 10 at 3, Nov. 16, 2017, Docket No. 1.) As part of her employment, McIntyre participated in an employer-sponsored long-term disability plan (the "Plan") funded by a group long-term disability insurance policy administered by Reliance. (Aff. of William D. Hittler ("Hittler Aff.") ¶ 3, Oct. 1, 2018, Docket No. 19, Exs. 1-26 ("Hittler Exs.") at 1, Oct. 1, 2018, Docket No. 19-1.) The Plan is governed by ERISA. (Compl. ¶ 7, Nov. 16, 2017, Docket No. 1; Answer ¶ 7, Dec. 21, 2017, Docket No. 4.)

By July 2011, McIntyre's worsening health rendered her unable to work. (Compl. ¶ 14.) McIntyre has suffered from Charcot Marie Tooth Syndrome ("CMT") her entire life. (*Id.* ¶ 11.) CMT is a neurological condition that affects peripheral nerves and can result in the loss of sensation and atrophy of muscles in the feet, legs, and hands. (Compl. ¶ 12.) In July 2011, McIntyre left her position as a Registered Nurse because her CMT caused her to have difficulty performing her job duties. (Hittler Aff. ¶ 51; Ex. 26C ("Ex. 26C") at 33-35, 118, Oct. 1, 2018, Docket No. 22.) Specifically, McIntyre had trouble balancing, ambulating to patient rooms, and with fatigue that required frequent naps. (Ex. 26C at 33-35.)

McIntyre applied for and received short-term disability benefits for her entire short-term disability eligibility period. (Compl. ¶ 15.) The Plan provided for two types of long-term disability benefits: (1) Regular Occupation, an employee is unable to perform the duties of their regular occupation due to his or her disability; and (2) Any Occupation, an employee is unable to perform the duties of any occupation due to his or her disability. (Hittler Aff. ¶ 51; Ex. 26A ("Ex. 26A") at 11, Oct. 1, 2018, Docket No. 20.) An insured may receive disability benefits for the first twenty-four months of their disability under the Regular Occupation benefit, but after twenty-four months, the benefit converts to Any Occupation, and an insured must then qualify for benefits under that definition. (Ex. 26A at 12.)

On September 27, 2011, McIntyre applied for long-term disability benefits with Reliance. (Compl. ¶ 16.) Reliance approved McIntyre's benefits retroactive to October 18, 2011—the day after McIntyre's short-term disability benefits expired. (*Id.* ¶ 17.) Through a third party, Reliance also helped McIntyre apply for and obtain Social Security Disability Insurance benefits that Reliance used to offset the benefits it was required to provide to McIntyre. (Ex. 26C at 97.)

Reliance initially determined that McIntyre qualified for Regular Occupation benefits because she had less than sedentary restrictions. (*See* Hittler Aff. ¶ 6, Hittler Exs. at 49.) In 2013 Reliance began evaluating whether McIntyre qualified for Any Occupation benefits. (Hittler Aff. ¶ 6, Hittler Exs. at 67-68.) In a letter dated February 5, 2016, Reliance notified McIntyre that because she was capable of performing sedentary and light work activity she was not entitled to receive Any

Occupation benefits beyond December 1, 2015. (Hittler Aff. ¶ 36, Hittler Exs. at 165.)

On May 31, 2016, McIntyre appealed Reliance's termination decision through her attorney, Jerold M. Lucas. (Hittler Aff. ¶ 51; Ex. 26E ("Ex. 26E") at 79, Oct. 1, 2018, Docket No. 24.) In her appeal, McIntyre included a letter from Dr. Vanessa Tseng, McIntyre's treating neurologist, opining that McIntyre was unable to engage in any gainful employment, even in a sedentary position; an employment evaluation report dated May 6, 2016 and prepared by Kate Schrot, a Qualified Rehabilitation Consultant; a letter from McIntyre; and seven testimonial letters from witnesses regarding McIntyre's disability. (*Id.* at 79-80.)

On June 22, 2016, Susan Strickler, a Senior Benefit Analyst with Reliance, responded by letter to Lucas informing him that Reliance was seeking further medical records from Dr. Mankato, Dr. Stevens, and Dr. Tseng. (Hittler Aff. ¶ 51; Ex. 26B ("Ex. 26B") at 200-01, Oct. 1, 2018, Docket No. 21.) Strickler also informed Lucas that the statutory period for processing an appeal would be tolled until Reliance received the requested information from McIntyre. (*Id.* at 200.) McIntyre asserts that a Dr. Mankato does not exist and thus records from Dr. Mankato could not be provided.

After nearly a month passed without receiving a response to its request for records from Dr. Tseng and Dr. Mankato, Reliance followed up by sending a letter to Lucas advising him that Reliance had not received a response and requesting Lucas's assistance in obtaining the records. (Ex. 26B at 207.) Dr. Tseng responded

on July 25, 2016. (Ex. 26E at 131.) Dr. Tseng provided the medical records, noting that the records had already been released to Reliance previously. (*Id.*)

Reliance then continued to wait for records from Dr. Mankato. On August 10, 2016, Reliance sent another letter to Lucas informing him that it had not yet received records from Dr. Mankato and again requesting those records. (Ex. 26B at 208.)

Then, on August 25, 2016, Reliance sent a letter to Lucas informing him that it had received and reviewed the medical records. (Ex. 26B at 209.) Based on this review, Reliance required McIntyre to undergo an independent medical examination ("IME"). (*Id.*) The letter stated that Reliance's "request for an IME will toll the statutory time frames for reaching an appeal determination, from the time of our request until such time as we receive the independent physician's report." (*Id.*)

By letter dated September 8, 2016, Reliance informed Lucas that an IME had been scheduled for September 20, 2016, and that McIntyre was required to attend the appointment. (*Id.* at 211.) The IME, however, was canceled the day before the appointment by the doctor due to a conflict of interest. (Hittler Aff. ¶ 51; Ex. 26F ("Ex. 26F") at 53, Oct. 1, 2018, Docket No. 25.) Reliance re-scheduled the IME for October 22, 2016 in Alexandria, Minnesota. (Ex. 26E at 207.) Lucas objected to this because the location required three hours of travel one way, and the IME was scheduled for a day when McIntyre was unavailable. (Ex. 26F at 2-3.) Lucas also noted that Reliance had already delayed a decision on the appeal too long. (*Id.*) Reliance replied in three letters, one dated October 20, 2016, and two dated October

25, 2016, informing Lucas that Reliance was "required to make a decision within 45 days of the date of [McIntyre's] appeal but [was] allowed an additional 45 days if circumstances do not permit us to make a decision within the initial 45 day time frame," and that those letters served as "notice of our intention to take beyond 45 days to make a final decision." (Ex. 26B at 213-218.) The October 22, 2016 appointment was cancelled on October 20, 2016 due to Lucas's concerns. (Ex. 26F at 84).

Although the second IME appointment had been cancelled on October 20, 2016, another IME was not re-scheduled until November 9, 2016. (*See* Ex. 26F at 82.) Reliance failed to promptly reschedule the IME because of an internal failure of communication and follow-up by the employee assigned to review McIntyre's appeal. (*See* Ex. 26F at 82-88.) The IME was then scheduled for December 3, 2016, in Burnsville, Minnesota with Dr. Khalafalla Bushara. (Ex. 26F at 6.) McIntyre attended the IME with her parents. (Ex. 26F at 10.) Dr. Bushara prepared a report dated December 16, 2016. (Ex. 26F at 9-16.) The report noted McIntyre's symptoms and ultimately concluded that McIntyre was capable of performing sedentary jobs, such as office work. (*Id.* at 16.) After review of the report, Reliance upheld its decision to terminate McIntyre's benefits by letter dated December 21, 2016. (Ex. 26F at 42-46.)

The administrative record contains opinions regarding McIntyre's ability to work from Debra Thompson, Dr. Tseng, Dr. Bushara, Ms. Schrot, and McIntyre's friends and family. Dr. Tseng, starting in 2011, evaluated and treated McIntyre for

her CMT and held the opinion that McIntyre could not work full time due to her CMT. (*See* Ex. 26C at 79-82; Hittler Aff. ¶ 51; Ex. 26D ("Ex. 26D") at 44, 46-47, 125-26, Oct. 1, 2018, Docket No. 23; Ex. 26E at 47-48, 81.) Dr. Tseng's latest opinion, made in March 2016, was that McIntyre could not work full time because McIntyre could not stay in one position or perform one task for greater than thirty minutes due to her pain and fatigue. (Ex. 26E at 81.) Debra Thompson, an occupational medicine registered nurse, also evaluated McIntyre starting in 2011 and provided the opinion that McIntyre could not work due to her CMT. (*See* Ex. 26C at 7, 33-35, 60, 114; Ex. 26D at 37-38, 98-99.) In May 2016, Ms. Schrot reviewed McIntyre's medical records, performed an interview, and evaluated McIntyre for an employment report and provided the opinion that McIntyre could not work full-time. (*See* Ex. 26E at 82-87.) In December 2016, Dr. Bushara reviewed McIntyre's medical records and evaluated her and provided the opinion that McIntyre could work full time in a sedentary position. (*See* Ex. 26F at 9-16.) Further, for much of the period that McIntyre received benefits, Reliance employees reviewed McIntyre's file and concluded that she was totally disabled and could not work full-time. (*See* Ex. 26A at 174-77.)[1]

In addition to medical opinions on McIntyre's condition and disability, Reliance also retained the Marshall Investigative Group ("Marshall") to perform surveillance on McIntyre. (Ex. 26D at 70.) Initially, Marshall primarily surveilled

---

[1] McIntyre also completed several forms documenting her daily living activities and providing supplemental information to Reliance, (*see* Ex. 26C at 107, 220-232; Ex. 26E at 21-29,) and provided several letters from family and friends describing her disability, (*see* Ex. 26E at 92-102.)

McIntyre's online activities, and spoke to some neighbors who indicated that McIntyre ran a dog breeding and showing business. (*Id.* at 72-73.) The second time Reliance retained Marshall, it noted that McIntyre was still involved with breeding and training her dogs, and that she had traveled out of state for those activities. (*Id.* at 164-65.) The final time Reliance retained Marshall, it surveilled McIntyre during three days. (*Id.* at 179-90.) McIntyre was seen at a kennel club, shopping, and doing light yard work for fewer than ten minutes each of those days. (*Id.*) Marshall also noted that McIntyre walked with a limp during the three days of surveillance. (*Id.*) McIntyre retired to her house in the early afternoon—around 2 to 3 p.m.— each of those days. (*Id.*)

## DISCUSSION

I.  **STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256. But "[w]here the moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any material fact, summary judgment must be denied even if no opposing evidentiary matter is presented." *Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 393 (8th Cir. 1996).

## II.  STANDARD OF REVIEW UNDER ERISA

A denial of benefits under an ERISA plan is reviewed for abuse of discretion where the plan gives the claims administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. Bruch*, 489 U.S. 101, 115 (1989). Courts, however, apply a less deferential standard where certain conditions exist.

The Eighth Circuit Court of Appeals in *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, noted the conditions for applying a less deferential standard of review. 302 F.3d 785 (8th Cir. 2002). The court stated "[a] plan administrator's decision will be afforded less deference if a claimant presents 'material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her.'" *Id.* at 795 (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160-61 (8th Cir. 1998) (abrogated on other grounds)); *see also Chronister v. Unum Life Ins. Co. of Am.*, 563 F.3d 773, 775 (8th Cir. 2009). The court made clear that the requirement to show a breach of fiduciary duty "presents a considerable

hurdle for plaintiffs." *Id.* (quoting *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 588 n.9 (8th Cir. 1999).

To determine the proper standard of review for this case, the Court must first determine whether a palpable conflict of interest or a serious procedural irregularity existed. If the Court finds that there was a procedural irregularity or a conflict of interest, the Court will then consider whether this irregularity or conflict of interest caused a serious breach of the plan administrator's fiduciary duty to McIntyre. If it did cause such a breach, the plan administrator's denial will be reviewed under a sliding scale where "the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity." *Id.* (quoting *Woo*, 114 F.3d at 1162).

## A. Conflict of Interest and Procedural Irregularity

The record makes clear that both a conflict of interest and procedural irregularities related to Reliance's denial of benefits existed. As the Supreme Court made clear in *Metro. Life Ins. Co. v. Glenn*, a conflict of interest exists where a plan administrator both determines eligibility for benefits and pays benefits claims. 554 U.S. 105, 112 (2008). Here, Reliance both determines and pays claims, so a conflict of interest exists.

Acknowledging that a conflict exists, Reliance argues that such a conflict should play a relatively minor role in the review of the denial here. Reliance acknowledges that the import of a conflict of interest will depend on the circumstances of the case. In reviewing for abuse of discretion, the Eighth Circuit has recognized that a "history of arbitrarily denying claims . . . is another factor that the Court must consider." *Chronister*,

563 F.3d at 776. Further, a conflict of interest is "more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). Although *Chronister* and *Glenn* applied this analysis to their abuse of discretion review, this analysis is also applicable when determining which standard of review to apply.

This Court is not the first to note the irregularities that have occurred in Reliance's benefits review. In *Nichols v. Reliance Standard Life Insurance Co.*, the court reviewed cases where Reliance was a party and "found over 100 opinions in the last 21 years criticizing Reliance's disability decisions, including over 60 opinions reversing a decision as an abuse of discretion or as arbitrary and capricious." No. 3:17-CV-42-CWR-FKB, 2018 WL 3213618 at *8 (S.D. Miss. 2018). Most notably, the *Nichols* court's review found that "Reliance's denials are overwhelmingly outweighed by evidence to the contrary, fraught with procedural irregularities, and blind or indifferent." *Id.* at *7 (internal quotations and citations omitted). Here the conflict of interest is sufficient to satisfy the first part of the *Phillips-Foster* test, especially in light of Reliance's history of biased claims administration.

Even absent this conflict of interest, the procedural irregularities in Reliance's review of McIntyre's claim are sufficient to meet the first prong of the *Phillips-Foster* test. The most glaring procedural irregularity in this case is Reliance's long delay in deciding McIntyre's appeal. Reliance was required to issue a decision on McIntyre's appeal within

45 days of submission.[2] 29 C.F.R. §§ 2560.503-1(i)(1)(i) and (i)(3)(i) (2016). Although the appeal was filed May 31, 2016, Reliance did not issue a decision until December 21, 2016, some 204 days later.

Reliance argues that the time should have been tolled during two periods: (1) when Reliance sought information from McIntyre's physicians; and (2) when Reliance requested McIntyre undergo an independent medical examination. Only the former, however, can properly toll the statutory time period for Reliance to process McIntyre's appeal. Tolling necessarily began on June 22, 2016, with Reliance's request for further medical records. Tolling ended when Dr. Tseng sent records to Reliance on July 25, 2016. That Reliance continued to wait for records from a non-existent "Dr. Mankato" is unreasonable and not the fault of McIntyre. Thus, the period in which Reliance failed to process McIntyre's appeal while it waited for a response from "Dr. Mankato" does not toll the statutory period. The tolled period includes only the thirty-four days between June 22, 2016 and July 25, 2016.

The period Reliance sought an IME does not toll the statutory period. The statutory period is tolled when plan administrators seek information from claimants because that information is not within their control. Here, whether and when McIntyre underwent an IME was entirely within Reliance's control. Reliance's first scheduled IME was canceled due to a conflict of interest. The second scheduled IME was canceled due to unreasonable

---

[2] Reliance could have extended this period for an additional 45 days if they had notified McIntyre in writing of special circumstances that warranted an extension, and provided a tentative date for the appeal decision. 29 C.F.R. §§ 2560.503-1(i)(1)(i) and (i)(3)(i) (2016).

travel and timing expectations by Reliance. Finally, the third scheduled IME was not scheduled within a reasonable time. None of these occurrences can be properly attributed to McIntyre. Reliance must bear the consequences of its own failures.

Finally, the conflict of interest and procedural irregularity must have some connection to the substantive decision reached. *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 795 (8th Cir. 2002). This requirement is easily satisfied here. Although Reliance had substantial evidence to support a determination that McIntyre qualified for disability benefits under the Plan's Any Occupation definition, Reliance chose not to make such a determination until far beyond when the statutory period had expired. By that point, Reliance had been able to schedule an IME that reinforced the decision it wanted to take—to deny McIntyre's appeal.

**B. Breach of Fiduciary Duty**

The Court now turns to the question of whether Reliance's actions breached its fiduciary duty to McIntyre. To show a breach of fiduciary duty, McIntyre must offer evidence that raises "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Phillips-Foster*, 302 F.3d at 795 (quoting *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 588 n.9 (8th Cir. 1999).

In *Phillips-Foster*, the court held no breach of fiduciary duty occurred where the claimant was likely involved in the death of the insured; investigators had asked the insurer to withhold benefits to further their investigation; and another person argued a superior claim for the benefits. *See id.* at 795-98. In *McGarrah v. Hartford Life Ins. Co.*, the court

affirmed no breach of fiduciary duty where the insurer had conducted a thorough investigation and determined the claimant was no longer totally disabled and the claimant could not produce any evidence to contradict that finding. 234 F.3d at 1032. In *Seman v. FMC Corporation Retirement Plan for Hourly Employees*, the court reversed a district court holding of no breach of fiduciary duty where the insurer failed to respond to an appeal of its decision and the claimant had submitted new medical evidence to support his appeal. 334 F.3d 728, 732-34 (8th Cir. 2003).

The facts of this case, and the doubts raised by them, are more akin to *Seman* than they are to *McGarrah* or *Phillips-Foster*. The administrator in *Phillips-Foster* had good reasons to deny the claims, and its decision reflected input by investigators as well as the potential problems arising from having multiple claimants. There are no similar circumstances in the present case. The administrator in *McGarrah* was given no new information on which to base its decision, but here, McIntyre provided new medical, expert and lay opinions to support her appeal. Thus, the present case is more similar to *Seman*, where the decision-making process of the administrator raised serious doubts about the decision being made arbitrarily or on the whim of the administrator.

One of the most significant factors that raises serious doubts about Reliance's decision-making in this case is the basis on which it denied McIntyre's appeal. Reliance's letter to McIntyre explaining its decision focuses almost exclusively on the results of the IME and gives short shrift to the considerable evidence that contradicts Reliance's ultimate denial of the appeal. For instance, despite Dr. Tseng's conclusion that McIntyre cannot stay in one position or do one task for more than thirty minutes at a time, Reliance

unhelpfully suggests that the sedentary roles it proposes "allow for breaks." (Ex. 26F at 45.) Given the realities of full-time work, the Court has difficulty imagining occupations that would consistently allow McIntyre to take a break every half hour. Reliance then rebuts Ms. Schrot's conclusion that McIntyre experiences fatigue, pain, neuropathy in the hands and feet, and impact on concentration by relying on Dr. Bushara's finding that McIntyre "showed normal tone and bulk in her upper extremity." (Ex. 26F at 45.) It takes a gigantic (and unwarranted) logical leap to go from McIntyre having normal tone and bulk in her upper extremities to concluding that she does not experience fatigue, pain, neuropathy in hands and feet, or impact on concentration. This logical leap strains credulity and raises serious doubts about Reliance's denial of benefits.

A sound decision-making process would consider and address all evidence, including that which contradicts the conclusion reached. By failing to pay close attention to evidence contained within the claim file, Reliance raises more concerns about the process by which it came to its decision. Such evidence includes, but is not limited to, Reliance's own employee finding that McIntyre lacked consistent work function on an ongoing basis in February 2015 (a conclusion affirmed by another one of Reliance's employees in May 2015); Dr. Tseng's conclusion that McIntyre could not engage in any gainful employment, even in a sedentary position, due to her limitations in March 2016; Ms. Schrot's opinion that although McIntyre could engage in some activities on an isolated basis, it did not mean she could perform them in an ongoing manner as is required at any job; and various accounts of friends, family members, and McIntyre herself, all of whom opined that McIntyre was unable to return to even sedentary work. Reliance barely

addressed any of this evidence, nor did it explain how it weighed this evidence against the IME. This omission raises serious doubts about whether Reliance made its decision arbitrarily and about the integrity of Reliance's decision-making process.

In conclusion, there was a conflict of interest as well as substantial procedural irregularities. Additionally, there is evidence which raises serious doubts as to whether the decision was the product of an arbitrary decision or the plan administrator's whim which constitutes a breach of the administrator's fiduciary duty to McIntyre. Thus, the Court will review McIntyre's benefits claim de novo due to considerable evidence of a conflict of interest, and serious procedural irregularities.

### III. MCINTYRE'S DENIAL OF BENEFITS APPEAL

Based on de novo review of the materials contained within the administrative record, the Court finds that the evidence establishes that McIntyre was totally disabled as defined by the Plan. McIntyre is unable to perform all of the material duties of any occupation on a full-time basis.

The evidence supports a finding of total disability. McIntyre's CMT caused muscles in her extremities to atrophy, especially in her legs. Dr. Tseng has documented the progression of McIntyre's CMT over more than four years. Starting in 2011 McIntyre's condition has worsened and then stabilized. This does not, however, mean that McIntyre's condition has improved. It simply means that after McIntyre's condition worsened, it at some point stopped worsening. As of March 14, 2016, Dr. Tseng noted that McIntyre was unable to perform tasks for more than half an hour due to fatigue and extraordinary pain.

As part of her appeal, McIntyre hired a Rehabilitation Consultant, Kate Schrot, to provide an opinion on McIntyre's employment prospects. Ms. Schrot performed an employability evaluation. Ms. Schrot concluded that McIntyre could engage in certain tasks, such as those that she was seen doing when Marshall surveilled her, but only on an isolated basis. This conclusion did not speak to McIntyre's ability to engage in such activities on an ongoing basis—such as what would be required for full-time work.

Although surveillance shows that McIntyre spent several hours outside her home at a kennel club and shopping, none of her actions were inconsistent with her self-report on daily-living activities. In fact, the surveillance bolsters McIntyre's claim because it showed that she 1) walked with a noticeable limp; 2) only spent a few minutes, generally less than ten, outside working on her garden and yard each day; and 3) did not leave her home after two to three p.m. All of these activities are consistent with McIntyre's disability.

Because the surveillance videos support McIntyre's claim for long term disability benefits, Dr. Bushara's opinion is the only evidence supporting termination of benefits. Dr. Bushara's opinion is not sufficient to support termination of benefits. Dr. Bushara noted that McIntyre was taking Tramadol and Gabapentin for pain and that they could cause drowsiness and fatigue. Dr. Bushara further noted that McIntyre had previously reported pain, and that one of her diagnoses was chronic pain. He also stated that "[b]ased on the medical records reviewed as well as today's examination, there are medical data to substantiate the subjective complaints [of chronic pain] as of January 18, 2016. As stated earlier, Charcot-Marie-Tooth is a progressive syndrome with worsening of symptoms over time." (Ex. 26F at 14.) Despite all this evidence that McIntyre suffered from extraordinary

pain that affected her concentration and limited her ability to work on a full-time basis, Dr. Bushara came to the conclusion that McIntyre could work full time in a sedentary position without ever analyzing how McIntyre's pain would affect such work. This failure to connect the dots weighs heavily against the reasonableness of using Dr. Bushara's report to determine eligibility for benefits.

Dr. Bushara's opinion is also directly contradicted by the evidence, including Dr. Tseng's opinion that McIntyre cannot work for more than a half hour on any one task. And although Reliance suggests that McIntyre may take breaks every half hour, doing so would clearly reduce the actual hours McIntyre works to below full-time, directly qualifying her for Any Occupation benefits. Even if McIntyre only took ten-minute breaks after each half hour she worked, she would be breaking for at least eighty minutes per eight-hour workday—totaling nearly seven hours each week. Factoring in that McIntyre requires longer naps, usually two hours, then McIntyre would, more realistically, be resting for at least half of the time she "works."

The Court thus holds that the evidence shows McIntyre is totally disabled under Reliance's Any Occupation long-term disability benefits. The Court will grant McIntyre's motion for summary judgment.

## IV. RELIANCES'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the foregoing, Reliance's motion for summary judgment will be denied.

## CONCLUSION

A de novo standard of review of Reliance's denial of McIntyre's benefits appeal is appropriate here. The Court finds that the evidence shows McIntyre qualifies for disability benefits under the Plan's Any Occupation disability benefit. As such, the Court will grant McIntyre's Motion for Summary Judgment and deny Reliance's Motion for Summary Judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 28] is **GRANTED;**

2. Defendant's Motion for Summary Judgment [Docket No. 16] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 28, 2019
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court