# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MELISSA A. MCINTYRE,

                                                    No. 17-5134 (JRT/DTS)

                        Plaintiff,

v.

                                            **MEMORANDUM OPINION
RELIANCE STANDARD LIFE INSURANCE            AND ORDER ON CROSS MOTIONS
COMPANY,                                    FOR SUMMARY JUDGMENT**

                        Defendant.

---

Katherine L. MacKinnon and Nicolet Lyon, **LAW OFFICES OF KATHERINE L. MACKINNON PLLC**, 2356 University Avenue West, Suite 230, St. Paul, MN 55114, for plaintiff.

Leah N. Kippola-Friske and William D. Hittler, **NILAN JOHNSON LEWIS PA**, 250 Marquette Avenue South, Suite 800, Minneapolis, MN 55401, for defendant.

Plaintiff Melissa McIntyre brought this Employment Retirement Income Security Act ("ERISA") action against Defendant Reliance Standard Life Insurance Company ("Reliance"), after Reliance terminated McIntyre's benefits based on its determination that her condition no longer satisfied the policy definition of "total disability." The Court reviewed the parties' cross-motions for summary judgment, and granted judgment in favor of McIntyre. Applying a de novo standard of review, the Court found that Reliance had breached its fiduciary duty to McIntyre. Reliance appealed and the Eighth Circuit vacated and remanded.

The case is now before the Court on remand, with the Eighth Circuit's instructions to apply an abuse of discretion standard. Because the Court finds that Reliance's denial of benefits was an abuse of discretion, the Court will grant summary judgment to McIntyre.

**BACKGROUND**

I.      **FACTUAL BACKGROUND**

A.      **The Policy**

McIntyre was employed by the Mayo Clinic Health System ("Mayo") as a Nurse from 2003 until January 1, 2011. (Compl. ¶ 10, Nov. 16, 2017, Docket No. 1; 1st Aff. of William D. Hittler ("1st Hittler Aff.") ¶ 4, Oct. 1, 2018, Docket No. 19, Ex. 2 at 35–36, Oct. 1, 2018, Docket No. 19-1.) McIntyre participated in an employer sponsored long-term disability plan (the "Plan") funded by a group long-term disability insurance policy administered by Reliance and governed by ERISA. (1st Hittler Aff. ¶ 3, Ex. 1 at 1, Oct. 1, 2018, Docket No. 19-1.) The Plan gives Reliance, as the claims review fiduciary, the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. (*Id.* at 16.)

The Plan provided for two types of total disability benefits: (1) Regular Occupation, which requires that an employee be unable to perform the duties of their regular occupation due to his or her disability; and (2) Any Occupation, which requires that an employee be unable to perform the material duties of any occupation due to his or her

-2-

disability.  (Ex. 1 at 11–12; 1st Hittler Aff. ¶ 51, Ex. 26A at 11, Oct. 1, 2018, Docket No. 20.)

The Plan considers the insured totally disabled "if due to an Injury or Sickness he or she is

capable of only performing the material duties on a part-time basis or part of the material

duties on a Full-time basis."  (Ex. 1 at 12.)

An insured may receive disability benefits for the first twenty-four months of their

disability under the Regular Occupation benefit, but after twenty-four months, the

benefit converts to Any Occupation, and an insured must then qualify for benefits under

that definition.  (Ex. 26A at 12.)

### B.    McIntyre's Condition & Treatment

McIntyre has suffered from Charcot Marie Tooth Syndrome ("CMT") her entire life.

(Compl. ¶ 11.)   CMT is an incurable progressive neurological condition that affects

peripheral nerves and can result in the increasing loss of sensation and atrophy of muscles

in the feet, legs, and hands.  (Compl. ¶ 12; 1st Hittler Aff. ¶ 51, Ex. 26C at 3, 33–35, Oct. 1,

2018, Docket No. 22; 1st Hittler Aff. ¶ 7, Ex. 5A at 50–53, Oct. 1, 2018, Docket No. 19-1.)

McIntyre was born with a clubfoot, hammertoes, fused ankle joints, and decreased tone

in her lower extremities.  (Ex. 5A at 50.)  McIntyre has a left drop foot which affects her

mobility and balance; in her mid-30s she experienced an acceleration of her symptoms,

including additional pain and balance impairment.  (*Id.*)

The record indicates that McIntyre sought treatment with Debra Thompson, a

certified nurse practitioner in Mayo Clinic Mankato's Occupational Health Service, and Dr.

Vanessa Tseng, a neurologist at Mayo Clinic Mankato as of 2011.  (*See* Ex. 26C at 33–34; 79–82.)  Sara Beske, Doctor of Nursing Practice at Mayo Clinic Mankato, served as McIntyre's primary care provider.  (*See* Ex. 26C at 33; 1st Hittler Aff. ¶ 51; Ex. 26D at 12, Oct. 1, 2018, Docket No. 23.)

### C.    McIntyre's Claims & Reliance's Initial Investigation

By July 2011, McIntyre's symptoms had progressed such that she was no longer able to work.  (Compl. ¶ 14; 1st Hittler Aff. ¶ 51, Ex. 26B at 252, Oct. 1, 2018, Docket No. 21.)  McIntyre left her position as a Registered Nurse because her CMT caused her to have trouble balancing, ambulating to patient rooms, as well as fatigue that required frequent naps.  (Ex. 26C at 33-35, 118.)

In September 2011, McIntyre applied for long-term disability benefits with Reliance.  (Compl. ¶ 16; Ex. 2 at 35.)  McIntyre's claim included a physician's statement by Thompson detailing the progression of McIntyre's condition, including fatigue, weakness, abnormal gait, balance problems, lower extremity wasting, and motor neuropathy.  (*Id.* at 43.)  Reliance approved McIntyre's benefits retroactive to October 18, 2011, the day after McIntyre's short-term disability benefits expired.  (*Id.* ¶ 17; 1st Hittler Aff. ¶ 5, Ex. 3 at 45–46, Oct. 1, 2018, Docket No. 19-1.)

Reliance also referred McIntyre to a third party to help her apply for and obtain Social Security Disability Insurance Benefits, which offset the benefit paid by Reliance. (Ex. 26C at 97–99.)  The Social Security Administration ("SSA") found that McIntyre was

totally disabled and awarded her benefits in the amount of $6,924.00, retroactive to January 2012. (*Id.* at 99–104.) As a result, Reliance required reimbursement for its overpayment of benefits, and demanded $7,849.48 from McIntyre. (*Id.* at 105.)

In 2013, Reliance began evaluating whether McIntyre qualified for Any Occupation benefits. (1st Hittler Aff. ¶ 10, Ex. 6 at 67–68, Oct. 1, 2018, Docket No. 19-1.) Reliance informed McIntyre that it would be gathering information concerning her medical condition, education, training, and experience to determine if she qualified as Totally Disabled from any occupation. (*Id*. at 68*.*) Reliance asked McIntyre to complete an "Activities of Daily Living Questionnaire" and clarified that McIntyre's receipt of social security disability benefits was not binding upon its own disability determination. (*Id.*)

### 1.    SURVEILLANCE

In addition to medical opinions on McIntyre's condition and disability, Reliance also retained the Marshall Investigative Group ("Marshall") to perform surveillance on McIntyre. (Ex. 26D at 70.) Initially, Marshall primarily surveilled McIntyre's online activities, and spoke with neighbors who indicated that McIntyre participated in dog breeding and showing, and surmised that she may generate some income from these activities. (*Id.* at 72–73.) Marshall's second surveillance report, dated March 2015, noted that McIntyre was still involved with breeding and training dogs, and that she had recently traveled out of state for those activities. (*Id.* at 163–65.) Finally, in July 2015, Marshall conducted in-person surveillance of McIntyre over the course of three days. (*Id.* at 179–

90.)  McIntyre was seen at a kennel club, shopping, and doing light yard work for fewer than ten minutes each of those days.  (*Id.*)  The report also noted that McIntyre walked with a limp during the three days of surveillance.  (*Id.*)  McIntyre retired to her house in the early afternoon each of day.  (*Id.*)

### 2.    Medical Records

The administrative record contains over a dozen reports from Dr. Tseng, Thompson, and Dr. Beske documenting the progression of McIntyre's CMT symptoms, including chronic pain, severe fatigue necessitating frequent naps, weakness in her upper extremities, and continued wasting in her lower extremities.  (*See, e.g.*, Ex. 26C at 33–34, 60, 79–82; Ex. 26D at 12–13, 37–38, 44, 46–47, 125, 129–30, 147; Hittler Aff. ¶ 51; Ex. 26E at 47, 152, Oct. 1, 2018, Docket No. 24.)

Dr. Tseng, who evaluated and treated McIntyre for her CMT between 2011 and 2016, held the opinion that McIntyre could not work full time due to her CMT.  (*See* Ex. 26C at 79–82; Ex. 26D at 44, 46–47, 125–26; Ex. 26E at 47–48, 81.)  Thompson also consistently documented a progression of McIntyre's symptoms, indicated that McIntyre's CMT was chronic and progressive, and opined on multiple occasions that

McIntyre's CMT prevented full-time work.[1]  (*See* Ex. 26B at 231; Ex. 26C at 7, 33–35, 60, 114; Ex. 26D at 37–38, 98–99.)[2]

### 3.  Review by Reliance Nurses

Nurses employed by Reliance also periodically reviewed McIntyre's file.[3]   On November 21, 2013, Nurse Heather DiFalco reviewed McIntyre's medical records and concluded that, despite McIntyre's dog breeding activities and part-time work as a respite care provider, she remained symptomatic from CMT and "lacks consistent work function ongoing." (Ex. 26A at 175.)  DiFalco provided an updated assessment on February 3, 2015, in which she reviewed additional medical data and McIntyre's physical capacity questionnaires and again concluded that, despite continued involvement in dog breeding

---

[1] On March 4, 2014, Thompson completed a Physical Capabilities Questionnaire on which she checked a box indicating that McIntyre could work at a sedentary lift level, exerting up to 10 pounds of force occasionally, or a negligible amount of force frequently.  (Ex. 26D at 98–99.)  For all other capacities—including McIntyre's ability to stand walk, climb ladders, crawl, reaching at waist level, pushing/pulling, fine manipulation, tactile sensation, and reaching above the waist— Thompson indicated that McIntyre could perform these functions occasionally or not at all in the context of an 8-hour workday.  (*Id.*)  The lift level question only gave the options of sedentary, light, medium, heavy, or very heavy lifts; it did not include an option for no exertion or an inability to work full-time at a particular exertion level.  Elsewhere, Thompson consistently reported that McIntyre's symptoms are progressive, and McIntyre is likely to be totally disabled indefinitely. (*See, e.g.*, Ex. 26C at 60–61, 114.)

[2] McIntyre also completed several forms documenting her daily living activities and providing supplemental information to Reliance, in which she disclosed her part-time work activities and detailed her progressive symptoms, treatment and medication regime, and physical limitations related to daily activities.  (*See* Ex. 26C at 107, 220–232; Ex. 26E at 21–29.)

[3] McIntyre's file was first reviewed by Reliance Nurse Patricia Toth, who evaluated McIntyre's initial claim for benefits and opined that "return to prior exertion not expected with the maximum of sedentary in the future but that level of exertion is guarded."  (Ex. 26A at 174.)

-7-

and showing, "the claimant lacks consistent work function on an ongoing basis." (*Id.* at 176.) On May 12, 2015, Nurse Robin Bickel reviewed McIntyre's record and similarly opined that McIntyre was unable to maintain consistent work function. (*Id.* at 177.)

On December 15, 2015, Nurse Ingrid Bergstrom indicated that she reviewed McIntyre's files and medical reports documenting McIntyre's worsening fatigue requiring 1–2 naps per day, longer recuperation time, and that McIntyre had experienced increasing foot pain and fatigue, had developed hypersensitivity of the feet as of July 2014, and had decreased reflexes and ongoing reports of weakness in her upper and lower extremities. (Ex. 26B at 31.) She also noted a physician's report that McIntyre had recently been unable to complete a return drive from the Twin Cities to Mankato due to fatigue. (*Id.*) Bergstrom nevertheless concluded that light sedentary work appeared supported; Bergstrom did not explain or provide justification for her departure from previous assessments by Reliance nurses. (*Id.*)

### 4. First Residual Employability Analysis

Reliance vocational analyst Carol Vroman conducted a Residual Employability Analysis on December 16, 2015. (Ex. 26E at 59–73.) Vroman was instructed to perform her analysis based only upon the notes from Bergstrom—the only Reliance nurse who had concluded that McIntyre was able to perform full-time work. (Ex. 26A at 246.) Vroman found that McIntyre's skills and qualifications were compatible with the following alternative occupations: Utilization-Review Coordinator, Cardiac Monitor Technician,

Hospital-Admitting Clerk, Office Nurse, Unit Clerk, Wellness Coach, Telephone Triage Nurse, Nurse Case Manager, and Rehabilitation Nurse Case Manager.  (Ex. 26E at 60; *see also* Hittler Aff. ¶ 51; Ex. 26F at 29, Oct. 1, 2018, Docket No. 25.)

### D.      Denial of Benefits

On February 5, 2016, Reliance notified McIntyre via letter that it had determined that she was capable of performing sedentary and light work activity, and she was therefore no longer considered Totally Disabled and was not entitled to receive benefits beyond December 1, 2015.  (1st Hittler Aff. ¶ 36, Ex. 18 at 165–70, Oct. 1, 2018, Docket No. 19-1.)  The denial letter summarizes the medical evidence documenting McIntyre's worsening degenerative symptoms, medication regime, and treatment history, and states that the need for additional documentation to support long-term benefits was triggered by information that McIntyre was functional in her home.  (*Id.* at 166–70.)  The letter also indicates that surveillance demonstrated that McIntyre was observed traveling to the kennel club, running errands, and performing light yard work.  (*Id.* at 168.)  The letter then states that, based on the information contained in McIntyre's file, its vocational staff has found that McIntyre would be capable of performing various sedentary occupations and therefore McIntyre failed to satisfy the Plan's criteria for Total Disability.  (*Id.* at 169.)

### E.      McIntyre's Appeal

On May 31, 2016, McIntyre appealed Reliance's termination decision through her attorney, Jerold Lucas.  (Ex. 26E at 79–80.)   In her appeal, McIntyre included an

employment evaluation prepared by Kate Schrot, a Qualified Rehabilitation Consultant, finding that McIntyre could not fulfill full-time duties in any occupation due to her chronic pain and fatigue; a letter from McIntyre describing the daily challenges associated with her CMT symptoms; and seven testimonial letters from witnesses reflecting on McIntyre's disability and the exacerbation of her pain and fatigue.  (*Id.* at 82–102.)

McIntyre also submitted a letter from her treating neurologist, in which Dr. Tseng opined that McIntyre cannot engage in any gainful employment, even sedentary work, due to her limitations.  (*Id.* at 81.)  Dr. Tseng stated that McIntyre suffers from "extraordinary pain," and is unable to stay in one position or perform one task for greater than thirty minutes due to chronic pain and fatigue.  (*Id*.)  Dr. Tseng also reiterated that McIntyre's condition is progressive and will further deteriorate over time.  (*Id.*)

### F.    Reliance's Review of McIntyre's Appeal

#### 1.    Procedural Delays

Reliance confirmed that it had received McIntyre's appeal on June 17, 2016, (Ex. 26B at 198), and shortly thereafter indicated that an initial review of McIntyre's file had been conducted and that Reliance required additional medical records from McIntyre's treating providers.  (*Id.* at 200).  Reliance also indicated that the statutory period for processing an appeal would be tolled until Reliance received the requested information from McIntyre.  (*Id.*)  Dr. Tseng responded on July 25, 2016, and provided the requested

medical records, but noted that all records had already been released to Reliance on previous occasions.  (Ex. 26E at 131.)

Reliance then continued to wait for records from Dr. Manakato.  On August 10, 2016, Reliance sent another letter to McIntyre's attorney informing him that it had not yet received records from Dr. Manakato and again requesting those records.  (Ex. 26B at 208.)  McIntyre asserts that a Dr. Manakato does not exist and thus could not provide the requested records.

On August 25, 2016, Reliance sent a letter to McIntyre's attorney informing him that, based on its review of McIntyre's medical records, Reliance required McIntyre to undergo an independent medical examination ("IME").  (Ex. 26B at 209.)  Reliance first informed McIntyre by letter that she was required to attend an appointment scheduled for September 20, 2016, (*id.* at 211), however, that appointment was cancelled on September 19, 2016 by the doctor due to a conflict of interest.  (Ex. 26F at 53.)  Reliance re-scheduled the IME for October 22, 2016 in Alexandria, Minnesota.  (Ex. 26E at 207.)  Lucas objected because the location required three hours of travel one way, which he argued was an unreasonable distance given McIntyre's chronic pain and fatigue, and because the IME was scheduled on a Saturday when McIntyre was unavailable.  (Ex. 26F at 2–3.)  Lucas also noted that Reliance had already delayed a decision on the appeal for several months, and expressed a concern that Reliance was not operating in good faith.  (*Id.*)  Reliance then canceled the October 22 appointment.  (Ex. 26F at 84.)

On October 20, 2016—142 days after McIntyre submitted her appeal—Reliance sent a letter to Lucas, followed by two additional letters dated October 25, informing him that Reliance was "required to make a decision within 45 days of the date of [McIntyre's] appeal but [was] allowed an additional 45 days if circumstances do not permit us to make a decision within the initial 45 day time frame," and that those letters served as "notice of our intention to take beyond 45 days to make a final decision." (Ex. 26B at 213–218.) On November 9, 2016, Reliance noted that an internal communication failure had further delayed efforts to reschedule McIntyre's IME. (*See* Ex. 26F at 82–88.)

### 2.    Independent Medical Examination

An IME was finally scheduled for December 3, 2016, in Burnsville, Minnesota with Dr. Khalafalla Bushara. (Ex. 26F at 6.) McIntyre attended the appointment with her parents. (*Id.* at 10.) Dr. Bushara performed a physical examination on McIntyre and observed that she was cognitively intact, she responded to pinprick sensation and demonstrated typical muscle tone in the upper extremities, but demonstrated profound wasting in the legs and feet with toe flexion deformities, and that pinprick sensations were decreased up to knee level. (*Id.* at 11.)

Dr. Bushara prepared a report dated December 16, 2016. (*Id.* at 9–16.) The report confirmed that McIntyre's symptoms of profound weakness, sensory loss, loss of balance, and wasting of the lower extremity muscles was consistent with CMT, opined that McIntyre's treatment to date had been reasonable and appropriate, and noted that the

prognosis was guarded because CMT is a progressive syndrome with worsening symptoms over time. (*Id.* at 14–15.) Dr Bushara ultimately concluded that McIntyre was capable of performing sedentary jobs on a full-time basis. (*Id.* at 14–16.)

### 3. Second Residual Employability Analysis

Vroman conducted a second employability analysis, reviewing only the IME report and restrictions and limitations proposed by Dr. Bushara. (*Id.* at 29–33.) Based only on Dr. Bushara's recommended restrictions and limitations, the second analysis revised the list of occupational alternatives down to six professions: Utilization-Review Coordinator, Cardiac Monitor Technician, Hospital-Admitting Clerk, Wellness Coach, Telephone Triage Nurse, Nurse Case Manager, and Rehabilitation Nurse Case Manager. (*Id.* at 29.)

### G. Outcome of Appeal

On December 21, 2016, Reliance upheld its decision to terminate McIntyre's benefits. (*Id.* at 42–46.) In its final denial letter, Reliance stated that it reviewed all the materials in McIntyre's claim file and determined that she was capable of returning to a light level occupation and no longer satisfied the Policy definition of Total Disability. (*Id.*) The letter noted Dr. Tseng's conclusion that McIntyre could not stay in one position or perform tasks for greater than thirty minutes, but stated that all of the occupations listed in the second REA allow for "breaks." (*Id.* at 45.)

## II.     PROCEDURAL HISTORY

McIntyre filed a complaint on November 16, 2017, alleging that she satisfied the Reliance Standard policy definition of disability and that Reliance's decision to terminate her long-term disability benefits breached the policy and violated ERISA. (Compl. ¶¶ 56–59.) The parties filed cross-motions for summary judgment. (Def. 1st Mot. Summ. J., Oct. 1, 2018, Docket No. 16; Pl. 1st Mot. Summ. J., Oct. 1, 2018, Docket No. 28.)

The Court found that Reliance's conflict of interest as both payor and administrator of the benefits and Reliance's serious procedural irregularities in handling McIntyre's claim warranted a less deferential standard. *McIntyre v. Reliance Standard Ins. Co.*, 2019 WL 2267054 at *4–5 (D. Minn. May 28, 2019) (citing *Woo v. Deluxe Corp.*, 144 F.3d 1157 (8th Cir. 1998)). Reviewing the administrative determination de novo, the Court granted McIntyre's Motion for Summary Judgment. *Id*. at *4–5, 8. Reliance appealed.

The Eighth Circuit found that the Court erred in treating a conflict of interest and the administrator's procedural delay as triggers for de novo review, rather than as factors considered in an abuse of discretion analysis. *McIntyre v. Reliance Standard Life Ins. Co.*, 972 F.3d 955, 963, 965 (8th Cir. 2020). The Court of Appeals vacated the judgment and remanded the case, with instructions that the Court review Reliance's benefits determination under an abuse of discretion analysis. *Id.* at 966. The parties again filed cross-motions for summary judgment. (Pl. 2nd Mot. Summ. J., Oct. 16, 2020, Docket No. 58; Def. 2nd Mot. Summ. J., Nov. 6, 2020, Docket No. 62.)

## DISCUSSION

### I.  STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material

fact and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and

a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a

verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A court considering a motion for summary judgment must view the facts in the

light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.  ANALYSIS

#### A.  ERISA Standard

"ERISA was enacted to promote the interests of employees and their beneficiaries

in employee benefit plans, and to protect contractually defined benefits."  *Firestone Tire

& Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989) (quotations omitted).  ERISA grants a plan

beneficiary the right to judicial review of a benefits determination.  *See* 29 U.S.C.

§§ 1132(a)(1)(B).  In reviewing a denial of benefits under ERISA, the Court looks to the

record that was before the plan administrator when a claim was denied.  *Roebuck v.

USAble Life*, 992 F.3d 732, 740 (8th Cir. 2021).  Where a plan gives the administrator

"discretionary authority to determine eligibility for benefits or to construe the terms of the plan" the court reviews the administrator's decision for abuse of discretion. *Firestone*, 489 U.S. at 114.

### B.      Abuse of Discretion Analysis

Although the abuse of discretion standard is deferential, it "is not tantamount to rubber-stamping the result." *Torres v. UNUM Life Ins. Co. of Am.,* 405 F.3d 670, 680 (8th Cir. 2005). Rather, the Court must determine whether the plan administrator's decision was arbitrary and capricious. *Midgett v. Wash. Grp. Int'l Long Term Disability Plan,* 561 F.3d 887, 896 (8th Cir. 2009) (quotation omitted). A decision is arbitrary and capricious if it was unreasonable, or not supported by evidence of substantial quantity and quality. *Id.* at 897; *Torres*, 405 F.3d at 680. A conflict of interest exists where, as here, a plan administrator both determines eligibility for benefits and pays benefits claims. *Silva v. Metro. Life Ins. Co.,* 762 F.3d 711, 717 (8th Cir. 2014). That conflict "must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115.

In assessing whether Reliance abused its discretion when making McIntyre's adverse benefit determination, the Court must weigh several case-specific factors. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). Here, the Court considers: (1) the timeliness of Reliance's determination with respect to McIntyre's appeal; (2) the quality and quantity of evidence that Reliance relied upon in making its determination;

(3) Reliance's consideration of the SSA's finding that McIntyre was disabled; and (4) Reliance's conflict of interest.

### 1.    Timeliness

Pursuant to ERISA's statutory timelines, McIntyre was entitled to a decision on her appeal within 45 days of submission.  29 C.F.R. §§ 2560.503-1(i)(1)(i) and (i)(3)(i) (2016). Administrators are authorized to extend the deadline for an additional 45 days if they notify the claimant prior to the termination of the initial 45-day period, and only then if special circumstances—such as the need to hold a hearing—warrant an extension.  *Id.*

McIntyre's appeal was filed May 31, 2016; Reliance informed McIntyre 142 days after her appeal was submitted that it intended to extend the deadline; Reliance issued a decision on December 21, 2016, 204 days after McIntyre appealed.[4]  Although Reliance attempts to characterize this delay as the product of unintentional errors, there is no doubt that this egregious procedural irregularity violated ERISA's clear statutory mandates.  *See, e.g.*, *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1318 (10th Cir. 2009) ("The relevant fact is that the administrator failed to render a final decision within the temporal limits prescribed by . . . ERISA." (quotation omitted)).

---

[4] The statutory period is tolled when plan administrators seek information from claimants because that information is not within their control.  The Court previously determined that there was a tolling period of 34 days while Reliance waited for medical records from Dr. Tseng. *McIntyre*, 2019 WL 2267054, at *5.

The Court need not establish a causal connection between the serious procedural irregularity and a breach of Reliance's fiduciary duty in an abuse of discretion analysis. *Chronister v. Unum Life Ins. Co. of America*, 563 F.3d 773, 776 n.4 (8th Cir. 2009); *see also id.* at 775 (citing *Glenn*, 554 U.S. at 117) ("*Glenn* makes clear that, while a causal connection might be important in determining the appropriate level of scrutiny for a plan administrator's decisionmaking, such a connection is not required.").[5]  However, the Court finds that the severity of Reliance's delay enabled Reliance to secure the single piece of evidence—Dr. Bushara's IME Report—that could plausibly justify its final denial, evidence which was almost entirely lacking from the original administrative record.

These procedural irregularities leave the Court "with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996).  Reliance's delay in processing McIntyre's appeal and it use of that delay

---

[5] In *Woo v. Deluxe Corp.*, the Eighth Circuit held that the evidence supporting a plan administrator's decision "must increase in proportion to the seriousness of the conflict or procedural irregularity." 144 F.3d 1157, 1162 (8th Cir. 1998).  The Eighth Circuit has interpreted *Glenn* as abrogating the portion of *Woo* which decreases the deference due the administrator in relation to the seriousness of the conflict of interest.  *See Hackett v. Standard Ins. Co.*, 559 F.3d 825, 830 (8th Cir. 2009).  Although Eighth Circuit has expressed doubt as to whether *Woo*'s "sliding scale" approach survives *Glenn* in any respect, it has avoided deciding whether the procedural irregularity component also fell.  *McIntyre*, 972 F.3d at 959–60; *see also Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 830–31 (8th Cir. 2014).  Pursuant to *Woo*'s sliding scale, Reliance has certainly failed to present evidence to support its denial in proportion to the egregiousness of its delay in processing McIntyre's appeal and other deficiencies in its claims process.  However, the Court finds that it need not rely on *Woo* because Reliance's determination does not survive the traditional abuse of discretion analysis.

to procure the only piece of medical evidence that supported its adverse determination therefore contribute to the Court's determination that Reliance's denial was unreasonable.

### 2.    Quality and Quantity of the Evidence

ERISA does not require plan administrators to accord special deference to the opinions of treating physicians, but administrators may not arbitrarily refuse to credit a claimant's reliable evidence. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). "When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1142 (8th Cir. 2016) (quoting *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir 2006)).

Reliance's initial denial of McIntyre's long-term benefits could not have been based on the medical record, as the record consistently reflected over the course of multiple years, and as late as spring 2016, that McIntyre was unable to work because of her chronic and debilitating pain, fatigue, mobility constraints, and the ongoing degeneration of her condition.  The only new information that Reliance presented in its initial denial came from the surveillance report, which indicated that McIntyre had hobbies, performed yard work for short periods, and retired to her home by early afternoon each day; these factors do not translate to an ability to perform full-time sedentary work.

In its final denial letter, Reliance relies almost entirely on the reports of Dr. Bushara and a second vocational report produced by Vroman.  Dr. Bushara noted the same symptoms identified by the other health professionals treating McIntyre; however, Dr. Bushara is the only examining physician to explicitly conclude that McIntyre is capable of full-time work despite her debilitating symptoms and degenerative condition.  Dr. Bushara's report is therefore an outlier in the medical evidence.  Further, Vroman's second report only applied the restrictions and limitations identified by Dr. Bushara and did not incorporate any of the restrictions identified by McIntyre's treatment team or evaluate the conflicting information that comprised the bulk of the record.

McIntyre provided ample evidence from medical professionals demonstrating that her condition was worsening and that she was unable to maintain full-time employment due to her significant limitations—most notably her need for frequent rest, inability to maintain a position or perform a task for more than 30 minutes at a time, chronic pain, and considerable mobility issues.  McIntyre therefore met her burden of demonstrating that she was entitled to the long-term disability benefits provided under the Plan.

The Court need not make any creditability determination concerning the IME to observe that the other medical professionals who examined McIntyre or reviewed her medical files, including three out of four Reliance nurses, concluded that McIntyre's incurable degenerative condition left her incapable of performing sedentary work functions for a full 8-hour day, 5-days a week.  Aside from Dr. Bushara's opinion, there is

no objective surveillance or medical evidence that indicates that McIntyre can fulfill the requirements of full-time work and is therefore ineligible for long-term benefits.

Because the IME report does not constitute substantial evidence when weighed against the remainder of the record, the Court finds that Reliance abused its discretion with regard to its almost exclusive reliance on Dr. Bushara's conflicting opinion.  See Midgett, 561 F.3d at 897 ("plan administrator has discretion to deny benefits based upon . . . [conflicting] opinions of reviewing physicians . . . unless the record does not support the denial."); *cf. Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1259 (8th Cir. 2012) (no abuse of discretion if the reports of consulting physicians constitute substantial evidence supporting the plan administrator's decision).  Because Reliance's final denial was not supported by substantial evidence, the Court therefore finds that this factor weighs in favor of a finding that Reliance abused its discretion.

### 3.      SSA's Disability Finding

McIntyre asserts that Reliance should have accounted for the SSA's contrary determination that she was disabled.  Reliance is not bound by the SSA disability determination pursuant to Eighth Circuit precedent.  *See, e.g.*, *Carrow*, 664 F.3d at 1259. The Court therefore finds that Reliance's rejection of a contrary SSA determination does not signal an abuse of discretion.  However, this factor may "justif[y] the court in giving more weight to the conflict [of interest] . . . because [Reliance's] seemingly inconsistent

positions were both financially advantageous[.]"  *Glenn*, 554 U.S. at 118.  Nevertheless, the Court finds that this factor does not weigh heavily in favor of either party.

### 4.    Conflict of Interest

The significance of a conflict must be weighed in relation to the other case-specific factors present in a case; for instance, the conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration."  *Glenn*, 554 U.S. at 117; *see also Chronister*, 563 F.3d at 776 (giving more weight to administrator's conflict of interest where other courts had noted a pattern of arbitrary benefit denials).

The Court will not belabor the well-documented irregularities and judicial critiques of Reliance's claims review process.  *See, e.g.*, *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 611–12 (6th Cir. 2016); *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 354–55 (5th Cir. 2015); *Hoff v. Reliance Standard Life Ins. Co.*, 160 Fed. Appx. 652, 654 (9th Cir. 2005); *Nichols v. Reliance Standard Life Ins. Co.*, No. 17-42, 2018 WL 3213618 at *6–7 (S.D. Miss. June 29, 2018), *rev'd*, 924 F.3d 802 (5th Cir. 2019) (collecting cases).  It suffices to say that Reliance has a documented history of arbitrary claims denials, which McIntyre raised in support of her claims against Reliance.  The Court finds here that Reliance's conflict of interest is due greater weight when viewed in the context of its egregious procedural irregularities and dependance on insubstantial evidence in

rendering its final determination against McIntyre.  The conflict of interest, therefore, supports the Court's conclusion that Reliance's denial of McIntyre's claim was an abuse of discretion.

### C.    Balancing the Factors

Under an abuse of discretion analysis, Reliance is due considerable deference. *Waldoch*, 757 F.3d at 833.  Nevertheless, plan administrators owe beneficiaries a fiduciary duty under ERISA, and the abuse of discretion standard cannot be a rubber-stamp on an administrator's otherwise unreasonable decision.  *Torres*, 405 F.3d at 680.

The record before Reliance contained considerable evidence of McIntyre's accelerating degenerative disability and several reports over the course of multiple years from its own staff and McIntyre's treatment team concluding that she was unable to fulfill the demands of full-time employment.  Nevertheless, Reliance premised its final denial on one conflicting medical opinion, which was also the sole piece of medical evidence provided to Reliance's vocational specialist, and which was presented only on appeal after an initial determination had been made.  Because Reliance's determination was not based on substantial evidence and Reliance's procedural delays contributed to its unreasonable determination, the Court concludes that Reliance abused its discretion, especially given its significant conflict of interest.  The Court will, therefore, grant summary judgment in favor of McIntyre.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. McIntyre's Motion for Summary Judgment [Docket No. 58] is **GRANTED**; and

2. Reliance's Motion for Summary Judgment [Docket No. 62] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  August 20, 2021                                          _John R. Tunheim_____
at Minneapolis, Minnesota.                                        JOHN R. TUNHEIM
                                                                              Chief Judge
                                                                United States District Court

-24-